THE PEOPLE OF THE STATE OF NEW YORK ex rel. HYMAN LEVINE, Appellant, *v.* JOHN SHEA, as Sheriff of New York County, et al., Respondents.

Husband and wife — proceeding to enforce alimony — a defendant who has served term of imprisonment, for failure to pay alimony, cannot be re-imprisoned under same order for failure to pay later installments due under such order.

A statute passed to enlarge liberty should be construed in a liberal spirit, so as to aid and advance the humane purpose of the legislature. While

472     People ex rel. Levine *v.* Shea.     [April,

Statement of case.     [Vol. 201.

a command, when clear, must be obeyed as it is written, when it is not clear the doubt should be so resolved as, if possible, to restore a prisoner confined on civil process to freedom.

Matrimonial actions are neither actions at law nor suits in equity, but statutory actions modeled largely upon equity procedure. Both power and practice depend on the statute except that where the statute is silent the practice usually follows the rule in equity.

The word "alimony" as used in section 111 of the Code of Civil Procedure, with no qualifying adjective, means alimony of either kind, whether granted by interlocutory order or by final judgment. The positive command of the statute that "the prisoner shall not be again imprisoned upon a like process issued in the same action" refers to both temporary and permanent alimony.

One who has served a full term of imprisonment under a commitment for failing to pay certain installments of temporary alimony awarded by an interlocutory order in an action for a separation cannot be again imprisoned under a commitment for contempt in failing to pay later installments which had become due under the same order.

(Argued March 15, 1911; decided April 25, 1911.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 10, 1911, which dismissed a writ of habeas corpus and remanded the relator to custody.

In January, 1908, Beckie Levine, one of the respondents in this proceeding, commenced an action against her husband, Hyman Levine, the appellant herein, to procure a judgment of separation. An answer was served but the action has not been tried and is still pending, although the appellant alleges that "he has taken all possible means to bring on the trial, and has moved to dismiss the case for want of prosecution." On the 2nd of June, 1908, an order was made in said action requiring the defendant therein to pay to the plaintiff the sum of twelve dollars per week as alimony *pendente lite,* and on the 18th of November of the same year the defendant was adjudged guilty of contempt for not paying the sum of $240 which had accrued, and it was ordered that he be imprisoned in the county jail until he should pay the same. On the 9th of December following by virtue of the last-named order he was committed by the sheriff to the county jail of New York

county, where he remained until the 9th of March, 1909, when he was discharged by the automatic action of the statute relating to imprisonment for debt.

On the 4th of April, 1910, a second order of commitment was made founded " on all the proceedings heretofore had herein," whereby the defendant in said action was adjudged guilty of contempt for failing to pay the sum of $1,032, which had accrued as alimony, since the making of the first order of commitment, and ordered to be imprisoned until it was paid. On the 28th of September, 1910, he was committed by the sheriff to the county jail in New York county and had been kept in close custody therein until the 8th of February, 1911, when he applied to the Appellate Division of the first department for a writ of habeas corpus claiming that his imprisonment under the last-named order was unlawful. The Appellate Division granted the writ and on the 10th of February, 1911, dismissed the same and remanded the relator to custody. He then appealed to this court.

*William C. White* for appellant. No language used in other parts of section 111 cuts off any part of the natural meaning of the word " alimony " in the enumerating clause of section 111, or restricts its application so as to exclude imprisonment for non-payment of alimony *pendente lite* under an interlocutory order from the benefit of the provision of section 111 regulating the length of terms of imprisonment. (*Beadlestone* v. *Beadlestone,* 103 N. Y. 404; *McCarthy* v. *McCarthy,* 137 N. Y. 501.) The provision in the latter part of section 111, prohibiting a second imprisonment in the same action upon a like process, applies to a second arrest where both processes were issued to punish for contempt in non-payment of different installments of alimony awarded by the same order in the same action. The provision, therefore, applies to the case at bar, which presents such a state of facts. (*Winton* v. *Winton,* 53 Hun, 4.)

*Joseph Gans* for respondents. Section 111 of the Code of Civil Procedure refers only to final process or mandate, and

does not apply to an order of arrest nor to a commitment issued before the trial of the action, and before the final determination thereof. (*Levy* v. *Solomon,* 105 N. Y. 529 ; *Matter* v. *Coyne,* 18 Civ. Pro. Rep. 397; 13 N. Y. Supp. 979 ; *Warshauer* v. *Webb,* 10 Civ. Pro. Rep. 169 ; *People* v. *Grant,* 10 Civ. Pro. Rep. 174; *Dalon* v. *Kapp,* 11 Civ. Pro. Rep. 58 ; *Reese* v. *Reese,* 46 App. Div. 156 ; 61 N. Y. Supp. 760; 29 Misc. Rep. 249 ; *People ex rel. Cohen* v. *Grant,* 3 N. Y. S. R. 186 ; 10 Civ. Pro. Rep. 158.)

VANN, J.   Counsel for both parties agree that the only question presented by this appeal is whether one who has served a full term of imprisonment under a commitment for failing to pay certain installments of temporary alimony awarded by an interlocutory order in an action for a separation can be again imprisoned under a commitment for contempt in failing to pay later installments which had become due under the same order ?

Imprisonment for debt dies hard. Barbarous, cruel and senseless, it puts its victim in jail in order to make him do something which in most instances the imprisonment itself prevents him from doing. It is the lawful use of torture and differs only in the degree of the suffering caused from the thumb screw, the rack and the boot. The spirit which for generations pervaded and upheld it is illustrated by the following official utterance of an eminent English judge : " If a man be taken in execution and lie in prison for debt, neither the plaintiff at whose suit he is arrested, nor the sheriff who took him, is bound to find him meat, drink, or clothes, but he must live on his own, or on the charity of others; and if no man will relieve him, let him die in the name of God, says the law, and so say I." (*Manby* v. *Scott,* 1 Mod. 124, 132.)

Many efforts have been made to put an end to the evil as well as to soften the hideous features known to former times. The noted Stilwell act, passed in 1831, brought about one of the great reforms in the history of legislation by abolishing,

with some exceptions, imprisonment for debt based on contract when the defendant was innocent of fraud. (L. 1831, ch. 300.) Other acts of less importance followed, and in 1886 a marked advance was made by limiting the period of imprisonment and restricting the circumstances under which a debtor could be imprisoned. (L. 1886, ch. 572, sec. 5.) That act is now section 111 of the Code of Civil Procedure, which is as follows : " No person shall be imprisoned within the prison walls of any jail for a longer period than three months under an execution or any other mandate against the person to enforce the recovery of a sum of money less than five hundred dollars in amount or under a commitment upon a fine for contempt of court in the non-payment of alimony or counsel fees in a divorce case where the amount so to be paid is less than the sum of five hundred dollars ; and where the amount in either of said cases is five hundred dollars or over, such imprisonment shall not continue for a longer period than six months. It shall be the duty of the sheriff in whose custody any such person is held to discharge such person at the expiration of said respective periods without any formal application being made therefor. No person shall be imprisoned within the jail liberties of any jail for a longer period than six months upon any execution or other mandate against the person, and no action shall be commenced against the sheriff upon a bond given for the jail liberties by such person to secure the benefit of such liberties, as provided in articles fourth and fifth of this title for an escape made after the expiration of six months' imprisonment as aforesaid. Notwithstanding such a discharge in either of the above cases, the judgment creditor in the execution, or the person at whose instance the said mandate was issued, has the same remedy against the property of the person imprisoned which he had before such execution or mandate was issued ; *but the prisoner shall not be again imprisoned upon a like process issued in the same action* or arrested in any action upon any judgment under which the same may have been granted. Except in a case hereinbefore specified

476        People ex rel. Levine *v.* Shea.        [April,

Opinion of the Court, per Vann, J.        [Vol. 201.

nothing in this section shall affect a commitment for contempt of court."

A statute passed to enlarge liberty should be construed in a liberal spirit, so as to aid and advance the humane purpose of the legislature. While the command, when clear, must be obeyed as it is written, when it is not clear the doubt should be so resolved as to restore the prisoner to freedom if possible. While the ·statute now involved has been before the courts on several occasions there is no controlling decision upon the point in question. It has been held that section 111 does not include orders of arrest in its limitation of the time of imprisonment "upon any execution or other mandate against the person." (*Levy* v. *Salomon*, 105 N. Y. 529.)

In *Reese* v. *Reese* (46 App. Div. 156) it was held that imprisonment under a commitment for contempt of court in failing to pay alimony *pendente lite* does not preclude further imprisonment for failing to pay alimony awarded by final judgment. While we do not adopt the principle of that case in allowing two terms of imprisonment for non-payment of alimony in the same action under any circumstances, it is sufficient now to say that it sanctions one term of imprisonment for non-payment of temporary alimony and another for non-payment of permanent alimony, but it does not permit two or more terms for non-payment of successive installments of either kind of alimony, which might result in imprisonment for life.

In *Winton* v. *Winton* (53 Hun, 4; affirmed on opinion below in 117 N. Y. 623) it was held that under a final judgment directing the payment of alimony in installments, the defendant can be imprisoned but once, and that he cannot again be imprisoned for not paying installments falling due later. The principle of that case applies to this, for in the absence of specific language it would be unreasonable to believe that the legislature intended a more severe remedy to compel the performance of a temporary duty than to provide for the performance of a permanent duty. Analogy points strongly toward the application of the same

1911.]          People ex rel. Levine *v.* Shea.          **477**

N. Y. Rep.]          Opinion of the Court, per Vann, J.

rule in both cases. Judge Daniels, in delivering the opinion of the Supreme Court, which was adopted by this court in the case last cited, said: "What was intended by the enactment of this section was to secure still further relief than that before sanctioned to the party who had previously been imprisoned and lawfully discharged. And that was described and directed in clear language, prohibiting the person from being again imprisoned upon a like process, not for the non-payment of the same sum of money, but issued in the same action. This language is very general and entirely unrestrained, and its obvious meaning is that no further process shall be issued against a person in an action for divorce, upon which he shall be committed to prison for the non-payment of a sum of money, after he has been once imprisoned and lawfully discharged under the preceding provisions of the section. If the enactment is not to secure this end, then it has accomplished no substantial benefit to the defendant required to pay alimony in an action for a divorce, for he may still be perpetually imprisoned if this section shall be held to permit his imprisonment after he has once been legally discharged under it. If that discharge is not to secure his protection against like proceedings afterwards instituted under the judgment, then, after he has served his first three or six months in prison and been discharged, he may be immediately arrested and committed again to prison for the non-payment of alimony accruing under the judgment while his imprisonment was endured. And this may go on from time to time through the entire period of his natural life. The intention of the law was not to permit this continued oppression and incarceration, but it was to restrict the right of imprisonment, when the period mentioned in the section should be fully endured by the party, to that imprisonment only, excluding after that the power to arrest or imprison the person in default of future payments." (p. 6.)

The claim that the section refers only to process issued upon a final judgment, as distinguished from process issued upon an interlocutory order, finds an answer in the fact that

the statute refers to a commitment for non-payment of counsel fees as well as alimony, yet counsel fees, as we have held, can be allowed only by an interlocutory order, with an exception not now important. (*Beadleston* v. *Beadleston*, 103 N. Y. 402, 404; *McCarthy* v. *McCarthy*, 137 N. Y. 500.)

The section in express terms provides that " The prisoner shall not be again imprisoned upon a like process issued in the same action." The second process in the action now before us was like the first, for both were issued under the same order allowing temporary alimony and both required an actual imprisonment within the prison walls with no right to the liberties of the jail. Both were issued in the same action, as well as for the same purpose, but not for the same amount, and this was the fact in *Winton* v. *Winton* (*supra*), the only difference being that in this case the process was issued to force the payment of a second installment of temporary alimony, while in that it was for a second installment of permanent alimony. The statute makes no distinction between the two kinds of alimony, but simply refers to a commitment for " the non-payment of alimony or counsel fees." The amount of the recovery or fine is mentioned only to control the duration of the imprisonment, which does not depend on ability to pay but on the sum to be paid. The remedies against the property of the person imprisoned are not affected, but are continued in full force notwithstanding his imprisonment.

Matrimonial actions are neither actions at law nor suits in equity, but statutory actions modeled largely upon equity procedure. Both power and practice depend on the statute except that where the statute is silent the practice usually follows the rule in equity. The matter of substance, so far as the recovery of alimony is concerned, is the amount rather than the method, and we think that the word " alimony " as used in section 111, with no qualifying adjective, means alimony of either kind, whether granted by interlocutory order or by final judgment. We think also that the positive command of the statute that " the prisoner shall not be again

imprisoned upon a like process issued in the same action" refers to both temporary and permanent alimony.

It follows that the order of the Appellate Division should be reversed and the appellant discharged from custody.

Cullen, Ch. J., Werner, Willard Bartlett, Hiscock and Chase, JJ., concur; Haight, J., absent.

Order reversed, etc.