ALICE P. WILLIAMS, Appellant, *v.* GIBSON T. WILLIAMS, Respondent.

Fourth Department, March 12, 1941.

*N. Henry Lindenauer* [*Gerald H. Chambers* of counsel], for the appellant.

*Persons & Blair* [*Charles F. Blair* of counsel], for the respondent.

DOWLING, J.   On June 17, 1914, the plaintiff recovered a judgment in Erie county, N. Y., divorcing the defendant and awarding to her the custody of four children born of the marriage.   The interlocutory and the final judgments contained no provisions relating to alimony for the plaintiff or support for the children. On May 8, 1939, the plaintiff procured an order directing the defendant to show cause why an order should not be made pursuant to the provisions of section 1170 of the Civil Practice Act modifying and amending the final judgment of divorce by inserting therein a provision ordering the defendant to pay to the plaintiff alimony in the amount of $7,500 per annum.   The order to show cause directed that service be made by registered mail on the defendant at his residence, 880 Rosaline road, Pasadena, Cal.   On the return day the defendant appeared generally and opposed the motion on three grounds: (a) That section 1170 of the Civil Practice Act is not retroactive, hence the court has no power or jurisdiction to award alimony in a proceeding subsequent to judgment.   (b) The plaintiff is guilty of laches.   (c) In 1924 the plaintiff moved to vacate the final judgment of divorce on the ground of fraud and lack of jurisdiction of her person; that the order denying her motion is *res adjudicata* and a bar to the maintenance of this proceeding. The Special Term denied the motion on the ground that section 1170 of the Civil Practice Act is not retroactive, hence the court had no power to grant the relief prayed for.   The judgment roll and the motion papers in the 1924 proceedings were made a part of the motion papers.   We are called upon to review that order.

The parties were married at Buffalo, N. Y., on April 21, 1897. Four children were born of the marriage.   In 1908 the defendant abandoned the plaintiff and their three children.   A fourth child was born shortly following the abandonment.   The parties never resumed cohabitation.   The defendant left the plaintiff and the children without means of support.   His aunt came to the rescue and gave the plaintiff $5,000 per year for her and the children's support until the aunt's death in September, 1919.   In or about 1909 the defendant became a bankrupt and thereafter his aunt contributed to his support also.   Following the institution of certain matrimonial actions in 1909 and in 1912 against the defend-

ant, the plaintiff and her children went to Berlin, Germany, to reside. She failed to co-operate with her attorney in Buffalo in the prosecution of said actions and he withdrew from the cases. In 1913 a gentleman from Buffalo called upon the plaintiff in Berlin. She instructed him to procure from her former attorney the papers in her matrimonial actions and to deliver them to some reputable firm of attorneys in Buffalo and to request them to proceed with her actions. He carried out her request. The attorneys instituted this action in 1913. The plaintiff verified the complaint before an American consul in Berlin. Personal service was made on the defendant and he appeared and served an answer. The complaint demanded the custody of the children but it contained no demand for alimony for the plaintiff or for support for the children. The case was referred to a reputable attorney to hear and report. The plaintiff testified before the referee at Buffalo that she desired the custody of the children but she was not asked if she desired support for herself or for the children and she gave no testimony on that subject. The referee submitted his report wherein he recommended that an absolute divorce be granted to the plaintiff and that she have the custody of the children, all of whom were infants. He made no recommendation in respect to alimony or support. The report of the referee was confirmed and an interlocutory judgment of divorce was granted and entered on March 2, 1914. So far as appears, the subject of alimony and support was not called to the attention of the court when the interlocutory judgment was signed. It was ordered that that judgment, after three months, should become final as of course unless otherwise ordered. At the expiration of the three months' period and on June 17, 1914, a deputy clerk of Erie county signed a final judgment and entered the same in his office. That judgment contained no provisions relative to alimony or support. The attention of the clerk, so far as appears, was not called to that fact. That judgment was not approved by the court before it was entered.

When plaintiff instituted this action she desired support for herself and for her children. The gentleman who delivered the papers to the plaintiff's attorneys, without her knowledge or direction, informed them that she desired only an absolute divorce and the custody of the children, hence the attorneys included no demand for alimony in the complaint. The plaintiff, when she verified the complaint, did not appreciate the importance of such an omission. Among the papers delivered to the plaintiff's attorneys was a memorandum dated July 13, 1911, in the plaintiff's handwriting. That memorandum was given to her attorney at that time. It directed him to make no demand for alimony in her matrimonial

actions. The reason for her instruction then was due to the attitude of the aunt who was maintaining the plaintiff and her children. She was opposed to the imposition of alimony and support upon the defendant. In the meantime, and before the plaintiff verified the complaint in this action, the aunt had withdrawn her opposition. The plaintiff supposed and believed that her attorneys understood her wishes in that regard. Due to this misunderstanding, no provisions were inserted in the interlocutory or final judgments relative to alimony or support, present or future. The attorneys acted in entire good faith in the matter. The omission of such provisions was inadvertent and wholly unintentional. The defendant, however, maintains that he consented to a divorce only upon the condition that he be relieved from the support of the plaintiff and the children. The plaintiff made no such arrangements with him and never authorized any one to make such an agreement in her behalf. As bearing upon the probability of the existence of such an agreement, it is significant that no provision was inserted in either the interlocutory or the final judgments relieving the defendant of the obligation to support his wife and children. It is more likely that the defendant was not concerned with the subject of support since his aunt was carrying the burden for him at that time.

The aunt left a will setting up trusts for the benefit of the plaintiff and for the four children. The income from these trusts proved insufficient for the support of the plaintiff and for the maintenance and education of the children. The plaintiff called the attention of the defendant to the situation with the result that on April 14, 1920, the plaintiff and the defendant entered into a written agreement wherein the defendant agreed to pay to the plaintiff for her support and for the education and maintenance of the children the sum of $5,000 per annum commencing as of October, 1919, and continuing thereafter until July 7, 1930, when the youngest child would become twenty-one years of age. The parties also agreed to modify the final judgment of divorce in respect to enlarging the defendant's rights relative to intercourse with the children. The parties also agreed that in case the plaintiff should fail to properly apply the yearly stipends the defendant might make application in this action to the Supreme Court " for its order and direction as regards the proper application by said Alice Perew Williams, of said moneys paid by him for the purpose aforesaid — such payments only to cease pending the direction of the Supreme Court as to their application." The plaintiff also agreed to release the defendant from all claims " which she may have or hold against First Party [defendant] either in law or in equity." It is not claimed that this release included alimony. That agreement is

evidence of the fact that the defendant recognized a continuing duty to support the plaintiff and the children and that he considered that the decree was still alive in that respect. The inference is permissible that the payments made over the years for their support by his aunt were in fact payments made at his request and for his benefit. After the expiration of this agreement the defendant continued to recognize his obligations to support the plaintiff by paying to her at first $1,800 per year, then $1,500 per year and at the commencement of this proceeding $900 per year. So far as appears, the defendant was not in a position to support his children and the plaintiff until the death of his father on March 6, 1919. By the terms of his father's will he became the life beneficiary of a trust amounting to approximately $400,000. The corpus of the trust passes to his children on his demise. It is from the income of this trust that the payments to the plaintiff have been made. The reduction in payments to the plaintiff was due to the shrinkage of the income from the trust.

We think the order in the 1924 proceedings denying the motion to vacate the judgment is not *res adjudicata* in this proceeding. In that matter the plaintiff did not ask for the relief here sought. The court did not consider or pass upon the failure of the interlocutory and final judgments to provide for support or to reserve the right to apply for it in the future although that fact was referred to in the moving papers. The Special Term did not pass upon that question in this proceeding. Orders as a rule have not the force of judgments. (*Bannon* v. *Bannon*, 270 N. Y. 484, 491.)

In 1914 actions for divorce were governed by article second of title 1 of chapter XV of the Code of Civil Procedure. Subdivision 2 of section 1759 of the Code of Civil Procedure permitted the court to make suitable provision in the final judgment for the support of the wife and the minor children of the marriage but it contained no provision allowing a wife to move for an amendment of the final judgment so as to include such a provision. Chapter 240 of the Laws of 1925, which amended section 1170 of the Civil Practice Act, empowered a wife to so move. But that amendment is not retroactive and the court below properly so held. (*Kamp* v. *Kamp*, 59 N. Y. 212; *Erkenbrach* v. *Erkenbrach*, 96 id. 456; *Walker* v. *Walker*, 155 id. 77; *White* v. *White*, 154 App. Div. 250; *Fox* v. *Fox*, 263 N. Y. 68.)

The claim of the defendant that he agreed to furnish evidence for a divorce on condition that the plaintiff waive her right to support is not sustained. Such an agreement would have been void as against public policy. (*Lake* v. *Lake*, 136 App. Div. 47; Dom. Rel. Law, § 51.) A wife, however, may properly institute

an action for absolute divorce on evidence disclosed to her by her husband of past acts of infidelity. (*Rosenzweig* v. *Rosenzweig*, 231 App. Div. 13.)

Under the peculiar facts of this case, we think the plaintiff was not guilty of laches. She was not aware of her legal rights until shortly before she instituted this proceeding. The fact that support had been furnished to the plaintiff by the aunt or by the defendant since 1919 should be given great weight in determining the question of laches.

" Matrimonial actions are neither actions at law nor suits in equity, but [are] statutory actions modeled largely upon equity procedure. Both power and practice depend on the statute except that where the statute is silent the practice usually follows the rule in equity." (*People ex rel. Levine* v. *Shea*, 201 N. Y. 471.) " The relation of husband and wife, both actual and legal, is utterly destroyed [by a final judgment of divorce], and no future rights can thereafter spring out of or arise from it. Existing rights already vested are not thereby forfeited, and are taken away only by special enactment as a punishment for wrong. But future rights dependent upon the marital relation and born of it there can be none." (*Matter of Ensign*, 103 N. Y. 284, 287, 288.) Certainly the plaintiff had a vested right to support for herself and children when the final judgment was entered in this action. (*Galusha* v. *Galusha*, 138 N. Y. 272.) As she was guilty of no wrong that right could not be taken from her and it is that vested right that she is here seeking to protect. The court has inherent power to correct its judgment. (*Matter of Ungrich*, 201 N. Y. 415; *Furman* v. *Furman*, 153 id. 309.) Every divorce decree should make provision for the support of a wife and minor children. (*Salomon* v. *Salomon*, 101 App. Div. 588.) The defendant's duty to support his former wife, unless terminated by the final judgment, remains unchanged. (*Romaine* v. *Chauncey*, 129 N. Y. 566.)

Since the failure to include in said judgments provision for alimony and support was unintentional and inadvertent, the court now has the power to amend the interlocutory and final judgments, *nunc pro tunc* as of the dates of their entry, by inserting therein a provision reserving to the plaintiff the right to apply to the court at any future time for an allowance of alimony. All the children have reached their majority, hence they have no rights to be protected here.

Power to amend a final judgment of divorce, which had been entered prior to the enactment of chapter 240 of the Laws of 1925, so as to award alimony to a former wife, in a proceeding subsequent to the entry of such judgment, does not exist. (*Kamp* v. *Kamp*,

*supra.*) But power to amend such a judgment *nunc pro tunc* so as to include therein a provision reserving to such wife the right to apply to the court at any future time, in the action itself, for an allowance of alimony, does exist. (*Lynde* v. *Lynde*, 162 N. Y. 405, 413, 414, affd., 181 U. S. 183, and cases cited.) This is such an application. Under the facts equity requires that such an amendment be granted.

The order appealed from should be reversed and the motion should be granted in so far as it seeks to amend the interlocutory and the final judgments, *nunc pro tunc* as of the dates of their entry, so as to include therein a provision reserving to the plaintiff the right to apply to the court at any future time for an allowance of alimony for herself. Otherwise the motion should be denied without prejudice to the right of plaintiff to move for an allowance of alimony, if she be so advised, and without costs to either party.

All concur, except CUNNINGHAM, J., who dissents and votes for affirmance on the authority of *Goldman* v. *Goldman* (282 N. Y. 296); *Fox* v. *Fox* (263 id. 68), and *Karlin* v. *Karlin* (280 id. 32). Present — CROSBY, P. J., CUNNINGHAM, DOWLING, HARRIS and McCURN, JJ.

Order reversed on the law and facts and motion granted to amend the interlocutory and final judgments, *nunc pro tunc* as of the dates of entry to include therein a provision reserving to the plaintiff the right to apply to the court at any future time for an allowance of alimony for herself. Otherwise the motion is denied, without costs, and without prejudice.