Murray T. Feideu, J.
The plaintiff moves for an order under rule 103 of the Rules of Civil Practice to strike out defendant’s answer and all affirmative defenses contained in said answer upon the ground that they are sham; and for an order under rule 109 to dismiss the affirmative defenses upon the ground that said defenses are insufficient in law. The plaintiff’s application for an order under rule 113 for summary judgment was withdrawn during the oral argument.
The complaint seeks a judgment to declare null and void a Mexican divorce obtained in 1946 by plaintiff against her former husband, John Francis Considine, now deceased, and annulling the subsequent Connecticut marriage in 1947 between the deceased and the defendant, who happens to be the plaintiff’s sister. The gravamen of the complaint is that plaintiff procured the Mexican divorce without the personal appearance of either spouse, both appearing through Mexican attorneys; that neither spouse was a resident of nor domiciled in Mexico; that said divorce decree, a copy of which is attached to the complaint, is void. It also affirmatively appears in said complaint that John Francis Considine died April 20, 1962. This action was not commenced until July 12, 1962.
The defendant’s answer admits that plaintiff obtained a Mexican divorce decree which dissolved the marriage between plaintiff and John Francis Considine, now deceased, but denies knowledge or information as to the other allegations concerning the manner in which the decree was obtained, notwithstanding the annexation of the alleged copy and purported translation of the decree. The defendant’s denials put in issue the accuracy of the decree and its translation and the plaintiff’s claim that the decree was of the “ mail order ” species.
The answer also contains five affirmative defenses. Three of these raise the defense of equitable estoppel based upon the claim that, in reliance upon the Mexican divorce, the deceased was prejudiced with respect to his choice of options under his civil service pension and retirement rights and the designation of a beneficiary under a group life insurance policy.
Although the plaintiff’s motion under both rules 103 and 109 is technically defective, the court is willing to assume arguendo, as contended by the plaintiff, that the Mexican divorce was of the mail-order type and hence void in order to decide and clarify the following important question of law: Can the defense of equitable estoppel be interposed against a spouse who procures a void mail-order Mexican divorce and then proceeds to attack the validity of the divorce, not for the sake of adjudicating the marital status but merely to assert a private *1023 claim for pecuniary gain after her former spouse is dead? If such defense is sufficient in law defendant’s answer and affirmative defenses cannot be said to be sham and raise bona fide issues of fact that must be decided upon trial and not on motion (Baker v. Matthews, 8 A D 2d 585, 586; Rosenthal-Block China Corp. v. Haviland China Corp., 12 A D 2d 915).
Attacks on Mexican mail-order divorces can be divided into two categories. In the first category are those cases where plaintiff in effect seeks to re-establish the former marital status. In those cases it has been well established that such Mexican mail-order divorces are void. The procuring spouse is not estopped from denying the validity of such divorce even though the other spouse has relied on its validity to his or her prejudice on the theory that such specious decree does not even have the semblance of jurisdiction and therefore there can be no estoppel against the spouse who obtained it (Rosenbaum v. Rosenbaum, 309 N. Y. 371; Caldwell v. Caldwell, 298 N. Y. 146; Querze v. Querze, 290 N. Y. 13; Alfaro v. Alfaro, 5 A D 2d 770, affd. 7 N Y 2d 949). However, it is of utmost importance to note that in the eases hereinbefore cited and similar cases, where the defense of estoppel was held to be insufficient, the plaintiff was seeking a judicial determination of his or her marital status with any financial benefits flowing from the establishment of such status being merely incidental to the relief sought. Those cases primarily revolve around the marital status asserted in connection with support, alimony and the like. The underlying principle of such eases is that the marital status takes precedence over all other considerations.
In the second category we have those cases where the plaintiff attacks the divorce primarily for the purpose of obtaining financial gain. The case at bar falls into this category. Here the action was not commenced against the wife of the plaintiff’s former spouse until three months after he died for the obvious purpose of gaining certain insurance and civil service retirement benefits from the death of said spouse. Under these circumstances, it would seem that the rationale of the cases which refuse to permit the defense of equitable estoppel should not apply.
The distinction between suits to establish the marital status and those which merely are brought to assert a private claim for pecuniary gain has been clearly stated and recognized in cases involving an invalid divorce in a sister State (Starbuck v. Starbuck, 173 N. Y. 503; Stevens v. Stevens, 273 N. Y. 157; Krause v. Krause, 282 N. Y. 355, 358-359). This distinction should apply as well to Mexican divorces. The best interests of *1024 the State will be served in refusing to grant relief to one who procures such a divorce and then contests the same solely to achieve a property right without in any way re-establishing the marital status.
Public policy in the stability of matrimonial ties is not flouted by the application of the doctrine of estoppel in the instant case, for such estoppel only denies a person the right to benefit financially from such party’s own misconduct. It does not give validity to the mail-order decree of a foreign State. As a matter of fact we have but to examine section 87 of our own Decedent Estate Law, to ascertain the public policy of this State. That section prohibits a person who obtains a foreign divorce on grounds not recognized in this State from sharing in the estate of the deceased’s former spouse (Matter of Rathscheck, 300 N. Y. 346).
"While the precise issue raised in the instant case does not appear to have been directly decided by our Court of Appeals, in Querze v. Querze (290 N. Y. 13, 17-18, supra) there is recognition of the principle that even in the case of a Mexican mail-order divorce, the distinction between a suit to adjudicate the marital status and one to assert a private claim or demand is a valid one. In that case the court held that the wife’s right to alimony is not a private claim or demand because the right to alimony derives from statute and hot common law and is a mere incident of the judgment in a matrimonial action. That court indicated that the result would have been different if the action was merely brought to assert a private claim or demand.
The distinction was also clearly recognized by the Appellate Division, First Department, in the case of Packer v. Packer (6 A D 2d 464, 467): “ Not to be confused with the problems arising from divorces obtained in sister States of the federal union are the specious mail-order divorces obtained in foreign countries. "With respect to such divorces the courts have made it clear that they do not have even sufficient vitality to create an estoppel against the spouse who obtains it in an action to establish marital status, although it may suffice to preclude the spouse from asserting a private claim or demand arising out of the marriage. ’ ’
The case of Dorn v. Dorn (202 Misc. 1057, affd. 282 App. Div. 597 [2d Dept.]) is directly in point. In that case it was conceded that the Mexican divorce was totally invalid. The action was brought to increase payments under the terms of a separation agreement. The defendant claimed that the action was based upon a private claim or demand and that the Mexican divorce, despite its invalidity, operated as an estoppel against such *1025 action. The lower court held that the plaintiff was estopped from denying the validity of the Mexican divorce, stating at pages 1058, 1059 and 1060:
“ Mexican mail-order divorces are so patently invalid that unlike divorces obtained in a sister State (see Krause v. Krause, 282 N. Y. 355) they do not estop a person who has procured one from commencing a matrimonial action in New York to have his or her marital status judicially determined. (Caldwell v. Caldwell, 298 N. Y. 146, supra; Querze v. Querze, 290 N. Y. 13; Vose v. Vose, 280 N. Y. 779.) However, an invalid foreign divorce, whether obtained in a sister State (Starbuck v. Starbuck, 173 N. Y. 503) or in a foreign country (Hynes v. Title Guar. & Trust Co., 273 N. Y. 612) ‘ will preclude the spouse who obtains it from asserting in our courts a private claim or demand arising out of the marriage (Querze v. Querze, 290 N. Y. 13, 17, supra.)
(See, also, Stevens v. Stevens, 273 N. Y. 157, 158-159.)
* * *
“ The support for which plaintiff here sues is not sought as an incident to a matrimonial judgment but as an end in itself. It is the whole object of plaintiff’s case. It is, therefore, not alimony as such, but rather a private claim or demand and, consequently, the void Mexican decree and plaintiff’s subsequent invalid marriage are a bar to this action. (Starbuck v. Starbuck, 173 N. Y. 503, supra; Hynes v. Title Guar. & Trust Co., 273 N. Y. 612, supra.) ”
In affirming the judgment of the lower court, the Appellate Division in a Per Curiam decision had this to say, at page 599: “ For more than five years the plaintiff accepted the amounts paid without complaint. Plaintiff, because of her marriage to Stern and her acceptance of the $15. payments, has accepted as satisfactory her position as the defendant’s divorced wife and Stern’s real wife within the meaning of the agreement. Furthermore, the facts alleged in the pleading evidence her construction of the agreement and acquiescence in such construction, which is the same as made by the defendant.” It therefore appears that although the Appellate Division did not specifically state that the plaintiff was estopped from asserting the invalidity of the Mexican divorce, it seems to have concurred with the reasoning of the lower court.
The Dorn case applies a fortiori to the facts in the instant case. Although this action is labeled a matrimonial action, it is actually a collection suit to recover death and civil service benefits for it can safely be assumed that if plaintiff is successful in this action, it would only be a prelude to a more aggressive *1026 assertion of private pecuniary rights. As was aptly pointed out in Senor v. Senor (272 App. Div. 306, affd. 297 N. Y. 800) the plaintiff does not come chastened in spirit seeking restoration of marital status but is merely seeking personal gain.
The plaintiff’s conduct does not commend itself to the court. Perhaps no better statement of the principles which should apply in this case can be cited than that of Mr. Justice Hopstader, writing in the Neto York Law Journal on the editorial page (Feb. 13, 1958, p. 4, cols. 2-3): “ Public policy may dictate that the court blind itself to the equities when directly adjudicating marital status. Though such a rule may lay undue emphasis on the public interest and not give enough weight to the immediate concern of the parties, it can perhaps be supported as a deterrent. It is, however, questionable whether in reason the rule should be extended to contests over property rights, especially after the death of one of the parties to the questioned marriage. These should be recognized frankly for what they are, money disputes, and dealt with generally in the same way as other like disputes. The equities taken into account in cases not involving a challenged marriage need not be brushed aside merely because a claim depends on such marriage. Application of such doctrine would not, we believe, undermine the institution of marriage and in most cases probably better serve the ends of justice ”.
Of course, the court does not come to any decision as to whether or not the plaintiff’s conduct and the reliance and prejudice of her former spouse and defendant are of such calibre as to justify equitable estoppel as a matter of fact. Mere laches and the remarriage are not sufficient to invoke the doctrine of equitable estoppel unless there is also a change in the position of the parties resulting in prejudice. What constitutes equitable estoppel is for the trial court to decide (Weiner v. Weiner, 13 A D 2d 937). The court merely rules that the affirmative defenses of equitable estoppel are sufficient as a matter of law.
The court having found the second, third and fourth defenses of equitable estoppel sufficient, it is not necessary to pass upon the sufficiency of the first and fifth defenses.
Plaintiff’s motion is denied.