Nathaniel T. Helman, J.
In an action for divorce brought under the provisions of subdivision (6) of section 170 of the Domestic Relations Law, plaintiff alleges that a separation agreement was entered into by the parties on September 8,1966, which was filed in the County Clerk’s office on September 21, 1966. The parties have since been separated under the terms of that agreement for a period in excess of the minimal two-year requirement of the statute. It is further alleged that plaintiff has substantially performed all of the terms of the agreement and its companion trust agreement, such agreements setting up a program of financial support for the defendant during her lifetime, with provisions securing her, by trust assignments and insurance policies, for alimony payment in case of plaintiff’s decease as well as an interest in defendant’s estate equivalent to her intestate share.
The controversy between the parties arises from the fact that subsequent to the execution of the separation agreement plaintiff obtained a unilateral divorce decree against the defendant in Mexico, defendant not having been served with process or appearing, and that plaintiff thereafter married another woman in the State of Virginia. Defendant now moves to dismiss the complaint, asserting that plaintiff should be estopped by Ms conduct from obtaining the relief sought in the instant action. While a similar factual pattern appeared in a recent decision in Nassau County Supreme Court in the case of Skrill v. Skrill, decided March 4, 1969, the subject of estoppel was not there discussed, and no other case has been brought to the attention of the court dealing with the precise problem here involved.
Ever since the case of Stevens v. Stevens (273 N. Y. 157) the doctrine of estoppel in divorce actions in New York has taken a unique and oft-criticized course. There the husband counterclaimed for divorce after obtaining a Nevada decree without jurisdiction of the action before the court, or the person of the wife. In sustaining the counterclaim, the court found a distinction between a judgment involving ‘1 marital status, ’ ’ and one concerned with a ‘ ‘ private claim or demand arising out of the marriage.” The rule was carefully defined in the later case of Querze v. Querze (290 N. Y. 13, 17) where the court said: ‘ ‘ This court has held that a void foreign divorce decree will preclude the spouse who obtains it from asserting in our courts a private claim or demand arising out of the marriage (Starbuck v. Starbuck, 173 N. Y. 503; Hynes v. Title Guarantee & Trust Co., 273 N. Y. 612). But we have consistently held that such a decree will have no effect upon the right of either spouse *610 to a full adjudication in our courts upon the question of the existing marital status (Stevens v. Stevens, 273 N. Y. 157; Davis v. Davis, 279 N. Y. 657; Vose v. Vose, [289 N. Y. 779] supra; Maloney v. Maloney, 288 N. Y. 532).” (Emphasis supplied.) (See, also, Shannon v. Shannon, 247 App. Div. 790; Considine v. Bawl, 39 Misc 2d 1021; McDermott v. McDermott, 252 App. Div. 875.)
The fine line thus drawn in the cases between adjudications of “marital status ” and those affecting “private rights ” in the law of estoppel, has led to further distinctions, equally troublesome, and to some criticism. (See Clark, Estoppel Against Jurisdictional Attack on Decrees of Divorce, 70 Yale L. J. 45, 50.) In Krause v. Krause (282 N. Y. 355) plaintiff sought to assert the invalidity of a unilateral Nevada decree against the wife by using same to avoid liability for her support. The court pointed out that in the Stevens, case, the plaintiff’s action was “ parallel ” to his action in obtaining the foreign decree, in that the purpose of both actions was a termination of his marriage to his first wife. Here the result sought was inconsistent with the purpose of the prior invalid Nevada decree. 1 ‘ But the estoppel which arises from the inconsistent position taken by a party in present or subsequent litigation assumes a different character. * * * As a leading text expressed it, this type of estoppel falls within the ‘ doctrine of preclusion ’, hindering a party from framing pleadings or adopting theories at war with a position taken in prior legal proceedings ”. (Knight v. Knight, 31 A D 2d 267, 271; Wynn v. Wynn, 189 Misc. 96.) Similarly, in McKay v. McKay (279 App. Div. 350) plaintiff wife, having obtained a separation decree against her husband, fixing support payment, thereafter obtained an ex parte judgment of divorce in Nevada. She returned to New York seeking alimony under the prior decree. The court held she was estopped to deny the termination of the marital status and denied her claim to alimony under the New York decree.
The validity of the complaint in the present action, must, of course, be tested in its relation to the new provisions of the Domestic Relations Law. It seems clear that were this action brought within the scope of the Stevens decision, plaintiff’s procurement of a voidable Mexican decree and his remarriage thereunder, would not bar him from divorce relief in a subsequent action in this State. The two actions would then be ‘ ‘ parallel ’ ’ in nature, and no private rights would be affected to defendant’s detriment. Do the provisions of the new statute effect a change in plaintiff’s right to proceed at the expiration *611 of the statutory two-year period? Subdivision 6 of section 170 authorizes a divorce by either party where, “ (6) The husband and wife have lived separate and apart pursuant to a written agreement of separation, subscribed and acknowledged on or after August first, nineteen hundred sixty-six by the parties thereto in the form required to entitle a deed to be recorded, for a period of two years after the execution of such agreement and satisfactory proof has been submitted by the plaintiff that he or she has substantially performed all the terms and conditions of such agreement.”
This court has already expressed its views on the subject of “ fault ” as applied to subdivision (5) of this section and on the legislative approach'to an “ old ” separation within the meaning of the statute. “ The statute expresses a clear intent to apply its provisions to ‘ old ’ as well as ‘ new ’ decrees of separation. * * * The entire purpose of the new law is to dispense with old concepts of fault, and to regard a marriage covered by the new two-year requirement as a dead marriage which either party may terminate.” (Telaro v. Telaro, N. Y. L. J., May 28, 1969, p. 17, col. 2.)
(Subdivision (6) is clearly unconcerned with the conduct or behavior of the parties, as a condition for granting each a right to divorce. The statutory intent is that such right becomes absolute, at the expiration of the two-year period, provided only that the .separation agreement has been duly performed. What significance, then, can be attached to plaintiff’s hasty action in seeking an earlier decree by the surreptitious and devious means of a unilateral foreign judgment? Certainly the wording of the statute itself effects no denial of his right to proceed with his newly conferred privileges merely because of his alleged misconduct. Fundamentally, the placing of restrictions or limitations on the right of either party to commence action at the expiration of the two-year period is within the legislative domain, and neither the law itself nor the legislative or committee reports preceding its enactment suggest any form of condition or restriction. Nor can either party to this proceeding claim ignorance of these provisions, for both, assisted by learned counsel, were aware that the separation agreement was signed after the enactment of section 170, and filed with the County Clerk, with authority to either to proceed with action upon the expiration of the two-year period.
Defendant relies strongly on the doctrine of estoppel in pais, based on plaintiff’s remarriage following the Mexican decree. Charging defendant with perverting the provisions of the new statute by 1 ‘ asking a Court of equity to grant him a divorce *612 against his lawful wife whom he represents to the world he has already divorced,” defendant points to plaintiff’s bigamous conduct as well as the alleged humiliation sustained by defendant as bearing upon his right to seek equitable relief. While the doctrine of unclean hands has occasionally found expression in matrimonial actions, (Packer v. Packer, 6 A D 2d 464), it has not generally been employed so as to bar plaintiff’s right to divorce solely on the basis of his prior activities in obtaining a unilateral foreign decree and remarrying thereunder.
Moreover, plaintiff’s rights derive from the 1966 statute itself and the language of the Court of Appeals in People ex rel. Levine v. Shea (201 N. Y. 471, 478) is apt; “ Matrimonial actions are neither actions at law nor suits in equity, but statutory actions modeled largely upon equity procedure. Both power and practice depend on the statute except that where the statute is silent the practice usually follows the rule in equity. ’ ’
Defendant having founded his present motion on documentary evidence allegedly sustaining her rights to a dismissal, an examination of the record discloses that the documents involved are the separation and trust agreement, the Mexican divorce decree, and a copy of the Virginia marriage license. The only significant documents for these purposes are the Mexican decree and marriage certificates, submitted as a basis for a res judicata or collateral estoppel claim. The views already expressed herein will serve to negate such claims since the prior proceeding was not a valid judgment found by a court of competent jurisdiction.
Defendant’s motion papers do not establish her right to relief under CPLR 3211 (subd. [c]). The motion will be denied.