IsiDOR. Wasservogel, Spec. Ref.
Plaintiff seeks a separation on tke ground of abandonment, and the sum of $20,000 per annum for her support.
Upon the trial of this action, plaintiff established that on or about May 3, 1958, defendant left their home, removed his belongings and, since then, has not returned. Defendant offered no proof to rebut such evidence. It necessarily follows, therefore, that plaintiff is entitled to a judicial decree of separation.
The $20,000 per annum alimony sought by plaintiff was vigorously opposed by defendant, who, since the parties have separated, has voluntarily paid plaintiff $500 per month plus $262.50 for the monthly rent of the apartment formerly occupied by both parties and in which plaintiff now continues to reside. Defendant, a member of the Bar, concededly is a man of rather substantial means, who, in the past three years, has earned upwards of $60,000 per annum. In 1957, his annual income was approximately $85,000, which dropped to $60,000 in the following year. There is no judicial or legislative sanction, however, of the popular theory that a wife is entitled to one third of her husband’s income, as, in effect, is sought here by plaintiff (Jacobs v. Jacobs, 82 N. Y. S. 2d 410).
*259 No definite formula has been evolved whereby the amount of support to be awarded in all cases can be determined by the court with mathematical certainty. Theoretically, it should be fixed at an amount sufficient to maintain the wife “ina manner fitting to her station in life ” (Hearst v. Hearst, 3 A D 2d 706, affd. 3 N Y 2d 967). It is well settled that one of the vital elements in determining this amount is the standard of living maintained by the parties prior to their separation (Patton v. Patton, 5 A D 2d 860; Hearst v. Hearst, supra). Contrary to plaintiff’s contention, however, this is not the sole criterion to be considered by the court. A realistic attempt must be made to balance the wife’s needs and her independent means, if any, for meeting them, with the husband’s ability to pay (Phillips v. Phillips, 1 A D 2d 393, 396, affd. 2 N Y 2d 742).
In the instant action, plaintiff’s testimony with respect to the standard of living of the parties is replete with vagueness, contradiction and uncertainty. Although plaintiff stated that she and defendant lived at the rate of ‘ ‘ $2,200 per month, ’ ’ she was unable to account satisfactorily for such alleged expenditure. An analysis of her testimony clearly indicates that plaintiff exaggerated the amount of moneys, used by the parties to maintain their home while they were living together as husband and wife. She admitted that approximately “ four, five hundred dollars ” out of the $2,200 “ house expense money ” was left at the end of each month. Moreover, the credible testimony establishes that from this $2,200 which was purportedly put in a joint bank account each month by defendant, he drew $900 a month for his personal expenses, out of which he paid $55 a week for maid service. Upon the evidence before me, therefore, I hold that the true cost of maintaining a home for the parties prior to their separation and their so-called “ standard of living ’’therein averaged no more than $1,000 a month.
As above noted, in fixing alimony, it is part of the court’s duty to consider the wife’s independent resources (Phillips v. Phillips, supra). The credible proof adduced upon the trial shows that plaintiff had cash assets amounting to more than $10,000. In addition thereto, plaintiff receives an annual income of approximately $5,000 tax free, which will continue for another seven years. In the last two of these seven years, plaintiff will receive an aggregate sum of almost $32,000, free and clear of all taxes. Plaintiff also has a 25% contingent interest in the fee of an income-producing property in Washington, D. C.
In light of these independent assets, it is now incumbent upon the court to examine into plaintiff’s present needs as well as a consideration of the needs and expenses of defendant. Included *260 therein is the tax burden which each of the parties will undoubtedly be compelled to assume when living separate and apart (Kraunz v. Kraunz, 293 N.Y. 152, 156). Undoubtedly, this burden will rest most heavily upon defendant, who for the past several years has paid average yearly Federal and State income taxes in excess of $20,000, based on a joint return with plaintiff.
The largest single item of expense which plaintiff incurs is the cost of psychiatric analysis she has been undergoing for the past two and a half years. The charge therefor is $150 per week. No indication was offered by plaintiff as to how long such treatment may reasonably be expected to continue in the future. In addition to this medical expense, it appears from the record that plaintiff’s fixed personal expenses, apart from the rent on the apartment which, as herein noted, has been paid by defendant to date, amount to approximately $140 per week. Significantly, $25 thereof is spent for taxi fares alone, $20 per week is devoted to piano and painting lessons which were begun only since her psychiatric treatment started, and $25 per week is paid to a maid who comes three times a week to clean the apartment now occupied by plaintiff alone.
Although the amount of temporary alimony is not determinative of the fact or quantum of the obligation to support, as it may be resolved after trial (Hearst v. Hearst, supra), nevertheless, it is significant that since the parties separated in May, 1958, plaintiff has accepted and lived on the $500 a month voluntarily paid to her by defendant for her personal living expenses (excluding rent). She staled that she owes no debts at the present time and nowhere in the record does it appear that plaintiff’s standard of living has in any way declined since her separation from defendant and his voluntary support in the amount above stated. In fact, without any apparent need to encroach on funds other than those provided by defendant and without any discomfort or inability to live 11 as usual ’ ’, plaintiff has been able to continue such recent innovations as her music and art lessons, $16 a week expense for facials and massages and $15 a week for beauty parlor treatments.
The court must also consider the fact, as adduced upon the trial, that it is also necessary for defendant personally to expend large sums of money to maintain his professional status as an attorney and for his own living expenses. Defendant testified, without effective rebuttal thereof, that he spends an estimated $3,000 per annum for entertainment of clients and prospective clients, for which he is not reimbursed by his law firm. In addition thereto, he pays annual life insurance premiums of $3,400, $1,500 a year on clothing and personal effects, *261 $216 a month for his separate two-room apartment, $150 a year for dental care, $780 a year for automobile expenses, and miscellaneous other expenses involving food, “support” of his son and a brother, as well as substantial Federal-and State income tax payments as heretofore indicated.
Giving due consideration to all of the foregoing, including defendant’s assets other than his income from the practice of law, alimony for the support of plaintiff is fixed at $300 per week. This amount is awarded by the court having in mind plaintiff’s present large medical expense. At such time as plaintiff ceases her psychiatric treatment or substantially reduces the number of visits to the psychiatrist and the cost of such treatment, defendant may apply for a reduction of the amount fixed herein.
At the conclusion of this action, plaintiff’s counsel made application to the court for an allowance for counsel fees. The motion therefor was here denied. No previous application had been made to Special Term or to this court. An award for counsel fees contemplates prospective services and disbursements and may not be made as an allowance for past services (Brody v. Brody, 3 A D 2d 992; Parkas v. Parkas, 263 App. Div. 367, 368; Liguori v. Liguori, 85 N. Y. S. 2d 397, 398; Rosenblatt v. Rosenblatt, 82 N. Y. S. 2d 124, 125). Contrary to plaintiff’s counsel’s assertions, there is no authority in section 1169 of the Civil Practice Act for the granting of counsel fees for services already rendered (see Fuchs v. Fuchs, 106 N. Y. S. 2d 779, 781; Ernst v. Ernst, 277 App. Div. 1045; Conklin v. Conklin, 201 App. Div. 170, affd. 234 N. Y. 546; Fisher v. Fisher, 223 App. Div. 19, affd. 250 N. Y. 313; Becker v. Pine, 193 Misc. 108).
There is no reason for the court to deviate in this matter from the above rule so well established in this State. The case of Browning v. Browning (221 App. Div. 801, affd. 247 N. Y. 579) which counsel so vociferously cited upon argument of his motion for counsel fees as authority for the proposition that the court must award counsel fees at this time, does not support such contention nor does it change any part of the general rule that no allowance may be made by a court to cover past expenses. The cited case is merely authority for the right of Special Term to grant additional counsel fees where such right was specifically reserved by such court until the close of the trial of the action.
In any event, counsel fees are payable to the wife and not to her attorney (Rimos v. Rimos, 81 N. Y. S. 2d 347; see, also, Matter of Waxstein & Gelbman, 130 N. Y. S. 2d 285; Kamman *262 v. Kamman, 167 App. Div. 423). Thus, in view of plaintiff’s substantial independent financial resources, it is doubtful, had her counsel’s motion for an allowance been timely made, whether plaintiff could, as the law requires, satisfactorily establish that she, herself, is unable to pay for the necessary legal expenses out of her own funds (Lake v. Lake, 194 N. Y. 179; Macchia v. Macchia, 243 App. Div. 741; Butler v. Butler, 204 App. Div. 602; Grossman, New York Law of Domestic Relations, §§ 903, 926). Accordingly, the court’s prior ruling denying plaintiff’s motion for counsel fees is hereby adhered to.
Judgment is rendered in favor of plaintiff in accordance with the foregoing. No costs are awarded.
Submit decree within five days on two days’ notice.
The above constitutes the decision of the court as required by the applicable provisions of the Civil Practice Act.