LUDMILLA HUNTER, Respondent, v. ALLAN B. HUNTER, Appellant.

First Department, April 12, 1960.

*Milton M. Bergerman* of counsel (*Bergerman & Hourwich,* attorneys), for appellant.

*Michael B. Atkins* of counsel (*Rothenberg, Atkins & Koss,* attorneys), for respondent.

BREITEL, J. P. This appeal involves the recurring problem of allowing examinations before trial in matrimonial cases to ascertain the income and assets of a defendant husband.

The examination was granted at Special Term because the husband admitted by his answer one of the grounds, namely abandonment, asserted by the wife for obtaining a judgment of separation. Since only the amount of the support award remained as a contested issue, it was held that the wife was entitled to a financial examination of the husband. It was thus assumed that the wife had made out the special circumstances, necessary in a matrimonial action, to obtain such pretrial examination. While in recent years some authority has developed for this result, the rule requiring a showing of special circumstances rests on no such narrow basis. Consequently, for the reasons later discussed in detail, the order should be reversed and plaintiff wife's motion to examine defendant husband as to his income and assets should be denied.

Notable in this case is that plaintiff wife does not disclaim sufficient knowledge of the husband's assets and income before the separation. What she seeks to ascertain is the extent of his post-separation assets and income. In considering the wife's right to a financial examination of the husband, it is evident that such right and its scope will depend upon the substantive principles which define a wife's right to support.

The parties were married in 1939, and there have been no children. They separated in April, 1958. This was some four months after the husband became a member of a well-known investment banking firm.

When the parties separated the husband started to send the wife $300 per month, or paid bills incurred by her amounting to that sum. In May, 1959 when he ascertained that the wife's checking account was drawn down to a low figure he voluntarily deposited $2,500 to build up the balance. Moreover, at the same time, the husband also wrote his wife saying that if the arrangements were not satisfactory he wished to be advised.

In January, 1960 the husband increased the disbursement to the rate of $600 per month. At all times he has paid the rent for the Manhattan apartment occupied by his wife. In addition, he turned over to her a securities account, of the approximate value of $65,000, which he claims to have established in her name, but which she asserts was started with an investment of her own.

The husband asserts flatly that he is now maintaining his wife at a level of support greater than that which subsisted immediately prior to the separation. The wife, on the other hand, does not assert (except in the most conclusory terms) that the level of support maintained by the husband since the separation in 1958 is less than the standard of living which obtained immediately prior to the separation. The wife disposes of that possible issue in her reply affidavit simply by saying: "I wish, too, to dispel any illusion that the $600 per month which my husband gives me now is in accordance with our standard of living. I have estimated that I need at least $25,000 per year for myself to maintain myself in accordance with our prior standard." At the same time no information is provided as to the aggregate amount in dollars which constituted the level of support prior to the separation. Nor are the constituent amounts submitted, except as to rent and a lump sum for clothing. Indeed, the record in this case contains no flat assertion by either party as to the husband's aggregate income before or after the separation.

The wife does not dispute that until recently she was fully cognizant of the husband's income and assets. In fact, through the taxable year 1958, the parties filed joint income tax returns, and the wife has recently been furnished copies of them. Because in 1958 the husband became a junior partner in his business the wife no longer knows what his income is, or what assets he has recently acquired. The husband concedes that his 1959 income would be at least as great as that during 1958.

Apart from these general assertions, and the meager reference in her reply affidavit to rent, clothing, and a summer home in Connecticut owned by the parties, the wife makes no effort to relate either expenses or income to the standard of living immediately prior to the separation. Nor does she raise an issue as to the adequacy of such standard of living — either for the past or the present.

On this showing there is insufficient basis to grant the examination.

This court, by rule (New York County, Supreme Ct. Rules, Trial Term, rule XI, subd. 7) and by decision (*Hurwitz* v.

*Hurwitz,* 3 A D 2d 744; *Garfinkel* v. *Garfinkel,* 2 A D 2d 965; *Wenglinsky* v. *Wenglinsky,* 282 App. Div. 1015; *Field* v. *Field,* 281 App. Div. 657; *Tausik* v. *Tausik,* 280 App. Div. 887), has made it quite clear that, despite the broadening of the scope for examinations before trial, there are, nevertheless, certain classes of actions in which examinations will be withheld unless there is a showing of special circumstances.

The exception is partly based upon the common experience that in certain classes of actions the burden of a pretrial examination may be so costly, time-consuming, and unproductive that the examination should be withheld in the absence of a showing of substantial merit. Similarly, in other classes of actions, of which the matrimonial action is typical, the pretrial examination too often becomes an exacerbating circumstance. Thus, it may unduly prevent the reconciliation of the parties or, even if reconciliation is not likely, make future relationships, which must persist despite separation, unnecessarily bad. Moreover, in some matrimonial actions it also occurs that the examination may serve the ulterior purpose of bringing unfair collateral pressure on the husband in relation to his business, his employment, his competitors, his creditors, or even the taxing authorities (see e.g., *Plohn* v. *Plohn,* 281 App. Div. 1056).

Nevertheless, despite the cautious view with regard to granting examinations before trial in matrimonial actions, the courts have not hesitated to allow an examination if it will primarily serve a legitimate purpose. One such purpose would be to provide a wife with the necessary information to establish the preseparation standard of living, the adequacy of such standard, or the present ability of the husband to maintain the appropriate standard, provided there is a showing that because of her ignorance of the facts or for other reasons it is desirable that she elicit such information before trial. Examinations with respect to these matters are permitted only because, substantively, they are relevant to the amount of the ultimate award to which the wife may be entitled.

The applicable principles may be briefly stated.

It has been the settled rule that an examination before trial as to financial condition will not be available if the right to support is contested and undetermined (*Van Valkenburgh* v. *Van Valkenburgh,* 149 App. Div. 482; cf. *Galusha* v. *Galusha,* 138 N. Y. 272, 281–282; Grossman, New York Law of Domestic Relations, §§ 590, 811–814). But the converse, namely, that a financial examination can be had because the only contested issue is the amount of support, is not *ipso facto* true. This —

although some courts in this department on occasion have so held (see, e.g., *Levi* v. *Levi,* 182 Misc. 445).

As noted earlier, it is the substantive principles governing the level of support which are relevant in determining the right to a financial examination or its scope. A wife is, generally, not entitled by way of support to more than the preseparation standard of living, provided such standard was a reasonable and adequate one within all the circumstances (*Tirrell* v. *Tirrell,* 232 N. Y. 224, 229–230; *Patton* v. *Patton,* 5 A D 2d 860; *Borchard* v. *Borchard,* 5 A D 2d 472, 477–478; see, also, *Shapiro* v. *Shapiro,* 8 A D 2d 341, 343). Thus, it is not true that a wife is entitled to share, as such, in the income or assets of her husband merely because a separation results from the husband's fault (*Hearst* v. *Hearst,* 3 A D 2d 706, affd. 3 N Y 2d 967; *Rosen* v. *Rosen,* 18 Misc 2d 257 [Wasservogel, Spec. Ref.]).

In most cases, where the income or standard of living of the parties is modest the husband's ability to maintain the standard of living for the parties, now separated, usually becomes quite critical because of the obvious economic consequences of a marital separation. The husband's present income and assets are then highly relevant matters (see *Kolmer* v. *Kolmer,* 19 Misc 2d 298, 301, 305 [Wasservogel, Spec. Ref.]).

But in many cases the husband's financial situation is such that there is no genuine dispute as to the prior and otherwise proper level of support or as to the husband's present ability to maintain it. In such circumstances, only in the rarest case is there occasion to examine the husband before trial with respect to his income or assets, past or present (see *Rose* v. *Rose,* 3 Misc 2d 753, 754 [McNally, J.], and in the same case, 282 App. Div. 682 and 1028).

A *caveat,* however, with respect to the rare case is necessary. There undoubtedly are instances, especially, but not exclusively, in marriages of long standing, where the wife is entitled to share in a progressive increase in the standard of living which is frustrated only because of the wrongful separation. A classic example would be the working wife who helps her husband through professional school, or the early years of professional or business growth, only to be displaced as the husband begins to reap the gains from a jointly invested foundation of savings, abstentions, and sacrifices. In such case, the husband's past and present income and assets — and perhaps his prospective income — may be appropriate matters for exploration.

In the light of these substantive principles, it is, therefore, essential for the wife to establish, in her application for a

financial examination, the preseparation standard of living. A standard of living in its material aspect is a mode of life expressible in a scale of expenditures. It may and should be shown by detail and in the sum of those details, and also by revealing the sources of the funds therefor.

In further support of the application, the wife ought also show the factors, if any, which she may wish to urge in justifying an increase in that standard, and the amount of support to which she deems herself entitled. She must also show the extent of her knowledge, or lack of knowledge, of the husband's finances, and an analysis of her contentions as to his present or future ability to satisfy the standard. In addition, in the light of the rule expressed in *Phillips* v. *Phillips* (1 A D 2d 393), the wife should disclose her own financial position, for in some cases it may affect the award.

On a proper submission, therefore, the issue or issues may be drawn and joined as to either the standard of living, the husband's present or future capacity to maintain such standard of living, or whether the wife is entitled to a level of support higher than the preseparation standard of living. But such a proper case must be established by evidentiary proof, in sufficient detail, on the application. These would provide the special circumstances required in most matrimonial actions. If present the wife may be entitled to an examination as to one or more of the foregoing issues with respect to the husband's income or assets, or both.

The financial issues having been thus joined, Special Term will then be in a position to determine whether a financial examination should be granted and what its scope should be. Needless to say, the duration and circumstances of the marriage, and respective fault between the parties, as well as their respective financial positions, may be substantial factors in fixing the amount of the award, and, therefore, in determining the wife's right to have an examination (*Phillips* v. *Phillips,* 1 A D 2d 393, *supra*). *Mutatis mutandis* the influence or effect of the income tax impact, the existence of minor children, and the prior number of marriages of the parties may also be considered as relevant factors. And, no doubt, there are other relevant factors although of less frequency.

Turning to this case, there is no evidentiary refutation of the husband's contention that he has maintained the wife since the separation at the prior standard of living, or even better. Nor is there any evidentiary support for concluding that the prior standard of living was not completely adequate as the parties were circumstanced. Nor is there disclosed any genuine

issue as to the husband's present ability to maintain the wife in accordance with the preseparation standard. True, the wife has shown a marriage of long standing, misconduct by the husband, and that she is entitled to support. But, as has been seen, that is not enough.

It is recognized that the principles discussed above, while they have been followed in this court for some time, are not similarly applied everywhere in the courts of the State (see, e.g., *Kirshner* v. *Kirshner*, 7 A D 2d 202, but cf. *Campbell* v. *Campbell*, 7 A D 2d 1011). Careful reconsideration of the experience in this area and a re-evaluation of the policy factors involved, however, suggest no departure from the practice heretofore followed in this department.

The husband, in opposition to this application, has noted that the wife had not sought temporary alimony. This circumstance is entitled to no weight in determining what the permanent award should be, or whether she requires a pretrial financial examination. There is an important public and judicial policy which would require that applications for temporary alimony not be made or encouraged unless there is genuine necessity (*Haas* v. *Haas*, 271 App. Div. 107). Hence the husband's argument in this respect should be disregarded.

Accordingly, the order granting plaintiff wife an examination before trial should be reversed, on the law, the facts, and in the exercise of discretion, and the motion denied, with costs to defendant.

RABIN, M. M. FRANK, McNALLY and STEVENS, JJ., concur.

Order unanimously reversed, on the law and on the facts, and in the exercise of discretion, with $20 costs and disbursements to defendant-appellant, and the motion denied, with $10 costs.