HERMAN PLANCHER, Respondent-Appellant, *v.* RUTH PLANCHER, Appellant-Respondent.

Second Department, December 28, 1970.

*Morris H. Halpern* (*Abraham J. Heller* of counsel), for appellant-respondent.

*H. Leonard King* for respondent-appellant.

HOPKINS, J. Two principal questions emerge from these cross appeals in an action for divorce based on the separation of the parties for more than two years following a decree of separation (Domestic Relations Law, § 170, subd. [5]). First, whether the statute authorizing a divorce on that ground is constitutional in the face of the rights of the defendant as a tenant by the entirety of what had been the parties' marital home. We hold that it is. Second, whether the plaintiff may obtain disclosure of the defendant's finances prior to the trial. We hold that disclosure is proper.

The parties were married on December 22, 1937; they have two children, both adult. The defendant, the wife, was granted a decree of separation on February 26, 1958. That decree provided for the payment of support of the defendant and the parties' then minor children by the plaintiff; and it also directed that the defendant be given exclusive occupancy of the marital home owned by the parties as tenants by the entirety. Since 1958 the plaintiff and the defendant have lived apart.

In 1962 the plaintiff procured an unilateral divorce from the defendant in Mexico and in 1963 he married Ann Berman; that second marriage was terminated by divorce in 1966. In 1968 the plaintiff brought this action. His complaint, implicitly conceding the invalidity of his Mexican divorce, seeks a divorce, a discontinuance or a reduction of the amount of support which he has been paying to the defendant, and a partition of the property owned by the parties as tenants by the entirety.

In answer, the defendant alleged six defenses and two counterclaims, which essentially claimed that subdivision (5) of section 170 of the Domestic Relations Law was unconstitutional, and sought a declaration of the illegality of the Mexican divorce, a denial of relief to the plaintiff because of his conduct in obtaining the Mexican decree, and reimbursement of expenditures on behalf of the marital home made by her during her occupancy.

The plaintiff then served interrogatories on the defendant, addressed mainly to the defendant's employment and assets. The defendant moved for a protective order. Shortly after the service of that motion the plaintiff moved to dismiss all of the defenses and counterclaims in the answer, with the exception of the fifth defense, which relates to the issue of support.

The Special Term disposed of the motions by (1) vacating the interrogatories concerning the defendant's finances, (2) striking the defenses challenged, except the sixth defense, which is aimed at the plaintiff's prayer for partition, but holding the counterclaims sufficient, and (3) granting leave to the defendant to add Ann Berman as a party. Both parties appealed.

The defendant argues that the Special Term erroneously dismissed the first four affirmative defenses because her rights of possession and survivorship as a tenant by the entirety of the marital home would be impermissibly affected by a divorce granted under subdivision (5) of section 170 of the Domestic Relations Law. In this position we think she is mistaken. Her rights as a tenant by the entirety antedated the adoption of the statutory reforms in the law of divorce, but that does not mean that those rights must be preserved in their pristine state, impervious to the changes in her marital status (*Gleason* v. *Gleason*, 26 N Y 2d 28). The attack in *Gleason* centered on the constitutionality of subdivision (5) of section 170 in the light of the effect of a divorce on social security and pension rights, inheritance and the marital status. None of these, it was pointed out by the Court of Appeals, attained the quality of vested status which is fundamental to insulation against statutory change (*Gleason* v. *Gleason, supra*, pp. 40–41). We recognize that the defendant's rights as a tenant by the entirety are valuable, personal and specific, and, in that sense, rise above the ephemeral qualities possessed by expectancies. But an analysis of the relationship between tenants by the entirety makes plain that their rights arising out of their marital status in turn depend on the continuance of the marital status.

The rights of tenants by the entirety rest in the common law. " This rule is based upon the unity of husband and wife, and is very ancient. It must have had its origin in the archaic period of our race, and it colored all the relations of husband and wife to each other, to the law and to society " (*Bertles* v. *Nunam*, 92 N. Y. 152, 157). The fiction of unity, despite the advent of legislation broadening the powers of married women, has persisted in the present concept of the tenancy (*Stelz* v. *Shreck*, 128 N. Y. 263; *Matter of Klatzl*, 216 N. Y. 83; *Yax* v. *Yax*, 240 N. Y. 590; *Hosford* v. *Hosford*, 273 App. Div. 659).[1] Upon the making of a grant of real property to husband and wife, the tenancy comes into being; and, on the death of one, the surviving spouse takes the entire estate. " The survivor takes the whole in case of death, because that event has terminated the marriage and the consequent unity of person " (*Stelz* v. *Shreck, supra*, p. 267). When a divorce occurs, the marital relation is altered, and the rights of the severed parties in the property are altered as well, so that the parties become tenants in common. This is not because of

1. Quite apart from the conception of the rights of the parties which the fiction of unity fosters, the survivorship characteristic of the tenancy has a social utility in achieving a certain and prompt distribution of the property in the family on the death of one of the spouses.

any retroactive effect of the decree of divorce on the original grant to the spouses, but because the creation of the tenancy by the entirety was dependent on their marriage and the marriage was a continuing condition for the existence of the tenancy (*Stelz* v. *Shreck, supra,* p. 269). Indeed, as the opinion states in *Stelz* (pp. 269–270), the guilty spouse in the divorce action enjoys his rights as tenant in common even as much as the innocent spouse.

No matter, then, how the marital status is ended, by the very nature of the relationship between the tenants by the entirety their rights are immediately altered by that ending. As the State incontestably controls the rights from time to time included within the marital status, and may modify the grounds upon which the marriage may be terminated (*Gleason* v. *Gleason,* 26 N Y 2d 28, 40–43, *supra*), we see no substance to the defendant's argument that her rights have been unconstitutionally infringed.[2] Hence, we hold that the Special Term correctly dismissed the first four defenses.

We think, however, that the Special Term should have dismissed the sixth defense as well. By that defense the defendant alleged that the plaintiff was not entitled to partition because he had obtained the void Mexican decree and had forfeited any claims to equitable relief. That defense is founded in part on the theory that the plaintiff had violated the separation decree in seeking a divorce. But the decree contained no provision preventing either party from obtaining a divorce; and the plaintiff cannot be barred from relief under subdivision (5) of section 170 because he applied in Mexico for a divorce and secured a worthless decree (*Tantleff* v. *Tantleff,* 60 Misc 2d 608, affd. 33 A D 2d 898).

We think, too, that the Special Term should have dismissed the first counterclaim, which prays for a judgment declaring that the Mexican divorce decree is invalid and that the defendant is the lawful wife of the plaintiff. In the context of this case, no controversy exists between the parties as to either prayer for relief. The complaint acknowledges that the defendant is lawfully married to the plaintiff and, accordingly, concedes the

---

2. Though we prefer not to put our decision on this ground, it is open to serious question whether a divorce detrimentally changes the defendant's rights. What was once a chance of complete ownership of the property pivotal on survivorship, on divorce becomes the certainty of a half ownership of the property. What realistically was not transferable by one spouse alone, while the other was alive, becomes immediately subject to partition and the collection of its monetary value by the divorce. The detriment of losing a chance to take all seems insignificant in comparison to the assured value of the half.

invalidity of the Mexican decree. This counterclaim should therefore be dismissed (*Krieger* v. *Krieger,* 25 N Y 2d 364; CPLR 3001). As a concomitant, the necessity of the presence of Ann Berman as a party in the action falls and the order should be modified by deleting the clause granting leave to bring her in as a party.

The Special Term properly denied the motion to dismiss the second counterclaim. The court, in determining the partition of the property, may take into account any expenditures made by the defendant which were required to preserve the interests of the parties in the property (*Sirianni* v. *Sirianni,* 14 A D 2d 432).

We come now to the second main question presented by these appeals. We note that the defendant has not squarely met the plaintiff's claim that he has complied with the terms of the separation decree; at least, we see no issue raised by the defendant in the papers submitted on the motions. It is likely, therefore, that a divorce will be granted. As an incident to the judgment, new alimony may be provided (*Bishop* v. *Bishop,* 15 A D 2d 494). The financial circumstances of the parties thus are vital components in the resolution of that question (Domestic Relations Law, § 236).

We have held that ordinarily disclosure of a husband's finances should be directed, where the right to a decree is not seriously resisted and no special circumstances exist indicating that it would be improper to grant such disclosure (*Campbell* v. *Campbell,* 7 A D 2d 1011; *Pearson* v. *Pearson,* 30 A D 2d 927). No distinction can be made between disclosure of the husband's finances and that of the wife's finances (cf. *Phillips* v. *Phillips,* 1 A D 2d 393, affd. 2 N Y 2d 742; *Yannotti* v. *Yannotti,* 20 Misc 2d 973; 2 Foster-Freed, Law and the Family, § 22:33, p. 94). The defendant has submitted no countervailing circumstances which render improper the disclosure of her financial condition. In this perspective, the disclosure requested by the interrogatories plainly serves the objective of adequate preparation of the parties for trial and the orderly and expeditious conduct of the trial. Accordingly, the order should be modified so as to direct the defendant to answer items 8 to 18, inclusive, of the interrogatories.

In summary, the order of the Special Term should be modified by (1) dismissing the sixth defense and the first counterclaim alleged in the answer (2) deleting the last ordering paragraph, which granted leave to the defendant to bring in Ann Berman as a party to the action and (3) directing the defendant to answer items 8 to 18, inclusive, of the interrogatories served by the

plaintiff; and the order should be affirmed as so modified, without costs.

CHRIST, P. J., MUNDER, MARTUSCELLO and BRENNAN, JJ., concur.

Order modified by (1) striking from the first ordering paragraph the words " in all respects " and adding thereto, immediately after the word " granted ", the following: " as to items 1 to 7, inclusive, of the interrogatories and denied as to items 8 to 18, inclusive, thereof "; (2) striking from the second ordering paragraph the following: " only to the extent of " and inserting in said paragraph the words " and the sixth " immediately after " the first 4 " and also inserting therein the words " and ' XLIV.' and ' XLV.' " immediately after " ' XXXIX.', inclusive "; (3) striking from the third ordering paragraph all reference to the sixth affirmative defense and also the words " in all respects " and inserting therein, immediately after the word " denied ", the following: " as to the second counterclaim and granted as to the first counterclaim "; and (4) striking out the last ordering paragraph. As so modified, order affirmed, without costs.