■ NORMA PONARD, Appellant, v HUBERT PONARD, Respondent.—Order, Supreme Court, New York County, entered on November 19, 1975 granting the defendant husband's motion for a protective order and vacating the plaintiff wife's notice to take his deposition, unanimously reversed on the law and in the exercise of discretion, without costs or disbursements, and motion denied. In *Perse v Perse* (52 AD2d 60) and *Schneiderman v Schneiderman* (51 AD2d 914) we affirmed Special Term's grant of discovery of the husband's finances, thus abandoning our former more restrictive approach to such discovery in the light of the policy expressed by the enactment of section 250 of the Domestic Relations Law (L 1975, ch 690, § 1; ch 691, § 1). In the present case Special Term denied such discovery. Whether we apply our new standards or the former ones, we think this was error. In this case plaintiff met even this Department's former, stricter criteria for discovery of her husband's finances. *(Meyerhoff v Meyerhoff,* 41 AD2d 726; *Plancher v Plancher,* 35 AD2d 417, affd 29 NY2d 880.) While defendant has denied virtually every other allegation in the complaint and has interposed counterclaims seeking a judgment of divorce, the plaintiff's right to a decree, to the extent that it is based on the husband's continuous course of adultery (fourth cause of action), is undenied. Indeed it appears from an affidavit offered on his behalf in response to the wife's motion for temporary alimony and counsel fees, that he admits living with another woman and fathering her child. Financial disclosure was therefore warranted even under our former criteria unless special circumstances exist indicating such disclosure would be improper. Since defendant opposes disclosure of his financial condition the burden of making that showing is on him. *(Plancher v Plancher, supra; Stern v Stern,* 39 AD2d 87.) The conclusory averments, offered on his behalf, that defendant is being harassed and if allowed the pretrial examination would occasion a worsening of the relationship between the parties, are insufficient to satisfy that burden. On the other hand, inasmuch as the parties have been living separate and apart since mid-1972, there is substance to the wife's claim that she has only limited knowledge of her husband's financial resources. And the fact that she has been furnished with copies of his income tax returns does not obviate the need for the disclosure she seeks. *(Legname v Legname,* 43 AD2d 543; *Stern v Stern, supra.)* Concur—Murphy, J. P., Silverman, Lane and Yesawich, JJ.; Lupiano,

J., concurs in the following memorandum: Lupiano, J. (concurring). This is a separation action commenced by the plaintiff wife on or about July 19, 1974. I am fully in accord with the conclusion that section 250 of the Domestic Relations Law which, *inter alia,* directs pretrial disclosure of the financial resources of the parties in matrimonial actions is specifically limited to actions and proceedings commenced on or after September 1, 1975. *Matter of Hoppl v Hoppl* (50 AD2d 59) does not mandate a contrary result. *Hoppl* is a child support proceeding as distinct from a matrimonial action. It takes cognizance of the fact that a child is regarded as a ward of the court, and the court has the obligation of protecting the infant even upon its own initiative (28 NY Jur, Infants, § 3). The citing of section 250 of the Domestic Relations Law in *Hoppl* is simply dicta and was urged for its value in reinforcing the conclusion already reached, that disclosure was warranted in that type of proceeding. Further, it should be noted that in *Hoppl* (p 61) this court specifically recognized that "the petitioner has made an initial *prima facie* showing that the needs of the parties' child have increased" (emphasis supplied). The answer interposed by the defendant husband herein contains a virtual denial of all allegations of the complaint except those set forth in the fourth cause of action, which is based on the husband's alleged continuous course of adultery (see, also, CPLR 4502). However, the defendant avers in his answer as a first defense and counterclaim the invalidity of the Mexican divorce decree obtained by plaintiff from her first husband prior to her second marriage to defendant. It is further asserted that the marriage of plaintiff and defendant is therefore void. By stipulation dated August 1, 1975, this first defense and counterclaim was withdrawn. As second and third defenses and counterclaims, defendant respectively alleges abandonment and cruel and inhuman treatment warranting a divorce in defendant's favor. It must be noted in the context of this discussion that New York has not yet abandoned the fault concept in this area of domestic relations. In *Hunter v Hunter* (10 AD2d 291), a matrimonial case, we held that pretrial examination should be withheld in the absence of a showing of special circumstances warranting such examination. This conclusion was predicated on the observation that "the pretrial examination too often becomes an exacerbating circumstance" *(Hunter v Hunter, supra,* p 294). Subsequently, the Second Department in *Plancher v Plancher* (35 AD2d 417, 422), a matrimonial case, held that disclosure of a husband's finances is warranted, "where the right to a decree is not seriously resisted and no special circumstances exist indicating that it would be improper to grant such disclosure [citations]". Indeed, the Appellate Division in *Plancher* critically noted that "it is likely * * * that a divorce will be granted" and "As an incident to the judgment, new *alimony may be provided* [citation]. The financial circumstances of the parties thus are vital components in the resolution of that question (Domestic Relations Law, § 236)" *(Plancher v Plancher, supra,* p 422) (emphasis supplied). The Court of Appeals affirmed the opinion of the Appellate Division *(Plancher v Plancher,* 29 NY2d 880). *Plancher* thus expanded upon the *Hunter* rationale and as such was followed by this court in *Meyerhoff v Meyerhoff* (41 AD2d 726). With respect to the second and third defenses and counterclaims, it is clear that both parties are seeking either a separation or divorce and this fact tends to dilute any ramification emanating from the "exacerbating circumstance" rationale delineated in *Hunter v Hunter (supra).* The issue thus squarely presented is whether disclosure under the circumstances herein may be allowed as within the ambit of the rule enunciated in *Plancher.* Parenthetically, it may be argued that if the defendant prevails in either of his

counterclaims for divorce, the plaintiff would not be entitled to alimony under section 236 of the Domestic Relations Law which provides for alimony *inter alia* "notwithstanding that the court refuses to grant the relief requested by the wife * * * by reason of the misconduct of the wife, unless such misconduct would itself constitute grounds for separation or divorce". (See *Kall v Kall,* 35 AD2d 943; *Schine v Schine,* 36 AD2d 300; see, also, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, § 236.) However, assuming misconduct of the plaintiff as alleged by defendant, the marriage bond continues and is not dissolved without a judicial proceeding (NY Const, art I, § 9). Thus, defendant's failure to dispute in the pleadings plaintiff's assertion of a continuous course of adultery on his part obtains great relevance. Further, although it is clear that section 250 of the Domestic Relations Law is prospective, nevertheless it creates an ambience warranting a liberalization of the *Plancher* doctrine under the circumstances herein. It must, therefore, be concluded that financial disclosure is warranted herein unless special circumstances exist indicating that such disclosure would be improper. Defendant has patently failed to carry the burden of showing such special circumstances. Note is taken of *Schneiderman v Schneiderman* (51 AD2d 914) which may be urged for the proposition that section 250 of the Domestic Relations Law is to be retroactively applied to matrimonial actions commenced prior to September 1, 1975. In that case, the plaintiff's action for a separation and incidental relief was commenced on December 6, 1974, prior to the effective date of the statute. Presiding Justice Stevens in a trenchant dissent disavowed under those circumstances retroactive application of section 250 of the Domestic Relations Law and applied the criteria for disclosure enunciated in *Plancher v Plancher (supra)* and *Meyerhoff v Meyerhoff (supra).* The majority in *Schneiderman* acknowledged the merit of "the reasoning of the dissenter", but held that "in view of *the policy* declared by the Legislature, it would serve no useful purpose to hold that there was an abuse of discretion below *in the circumstances* of [that] case" (emphasis supplied). Scrutiny of the record in *Schneiderman* discloses that the plaintiff's right to the decree was seriously contested by way of, *inter alia,* denials, a first affirmative defense of condonation, a second affirmative defense and first counterclaim alleging abandonment and a third affirmative defense and second counterclaim alleging cruel and inhuman treatment. It must, therefore, be concluded that the majority in *Schneiderman* recognized that the statute (Domestic Relations Law, § 250) is applicable to matrimonial actions commenced on or after September 1, 1975, but in view of the policy delineated in that enactment, concluded that the *Plancher* rationale should be liberalized within the context of the circumstances embraced by the record in *Schneiderman.* Thus viewed, *Schneiderman* does not stand for the proposition that section 250 of the Domestic Relations Law is applicable to all extant matrimonial actions whether commenced prior to, on or after September 1, 1975. "A legal principle, once established by decision, will be followed by courts in their determination of questions coming fairly within its terms. This adherence to precedent is known as the doctrine of stare decisis and makes for *stability and certainty* in the law. The doctrine relates to legal principles only and not to facts" (1 Carmody-Wait 2d, NY Prac, § 2:50) (emphasis supplied). The aforesaid analysis comports with the policy of *stare decisis.* It recognizes that the enactment of section 250 of the Domestic Relations Law creates a liberalizing atmosphere involving the issue of disclosure in matrimonial actions commenced prior to September 1, 1975 and, of necessity, mandates full liberality in respect of such actions commenced on or after said date.