FRED OBERSTEIN, Appellant, v ENID OBERSTEIN, Respondent.

First Department, May 3, 1983

APPEARANCES OF COUNSEL

*Philip L. Friedman* for appellant.

*Robert C. Agee* of counsel (*Walter J. Handelman*, attorney), for respondent.

OPINION OF THE COURT

KASSAL, J.

The question which confronts us on this appeal is the continued viability of the legal principle expressed in *Shiffman v Shiffman* (57 AD2d 519) in *Gleeson v Gleeson* (69 AD2d 964, mot for lv to app dsmd 47 NY2d 709) and in other cases, holding that where the support obligations of the parties are fixed by a subsisting separation agreement, disclosure as to finances may not be obtained in a subsequent conversion action for divorce, since support is not in

issue unless and until the separation agreement is declared invalid and set aside. The basic issue is whether that long-standing principle applies in matrimonial actions commenced after July 19, 1980, the effective date of the Equitable Distribution Law (Domestic Relations Law, § 236, part B).

The parties were married on December 17, 1967. After a 12½ year marriage which produced one issue, a daughter, born November 6, 1974, the marriage disintegrated and the parties entered into a separation agreement on October 21, 1980. The agreement, prepared by one attorney representing both parties, provided, *inter alia,* that the marital residence be sold with the proceeds, household furnishings and personal effects being equally divided in accordance with the schedule annexed to the agreement; the wife was awarded custody of the child, with child support of $300 per month; the husband was to maintain $100,000 life insurance with the daughter named as the beneficiary and maintain medical and hospital insurance for the child's benefit. There was no provision made for maintenance payments for the wife. Moreover, both parties, at all relevant times, were employed, the wife as a speech pathologist with the Harrison School Board, earning in excess of $30,000 per year and the husband as a sales manager with Merrill Lynch.

Subsequently, on April 2, 1982, the husband commenced this action for divorce, based upon the parties having lived separate and apart, pursuant to a separation agreement, for a period in excess of one year (Domestic Relations Law, § 170, subd [6]). The wife answered, interposing two affirmative defenses and counterclaims, seeking rescission or, in the alternative, reformation of the separation agreement and an award "to meet the reasonable needs of the defendant, and child support to meet the reasonable cost of the care, education and maintenance" of the child. Together with the answer, the wife served a notice of deposition, "as to all factors relating to his financial state" and directing plaintiff to produce thereat an extensive list of items, including his Federal and State income tax returns for the period 1976 (four years prior to the separation agreement) to 1981; statements of brokerage and invest-

ment accounts; documents pertaining to pension, profit sharing, deferred compensation and stock option plans; statements as to cash value of life insurance policies; documents evidencing partnership or proprietary interest in real or personal property; and "any other documentary evidence of other assets of the plaintiff."

Thereupon, the husband moved for a protective order to vacate the notice of examination upon the ground that since there existed a valid separation agreement between the parties and, since support was not in issue, an examination into plaintiff's finances was improper. In opposition, the wife alleged, generally, that plaintiff had unfairly taken advantage of defendant in the preparation of the separation agreement in that defendant's "mental and emotional state at the time was such that I did not clearly perceive, or fully understand, what was going on" and that she "was not properly and independently represented and advised" when she signed the agreement. Special Term denied the motion, directing plaintiff to appear for examination and, further, finding that defendant was "entitled to full and complete disclosure of his finances" since defendant had interposed counterclaims alleging generally that the agreement was unfair and that "plaintiff fraudulently misrepresented his actual income and assets" to induce her to sign the agreement.

It has been established law in this State that where there is an existing separation agreement, which controls the respective support obligations of the parties, in a subsequent matrimonial action for divorce neither alimony nor support is in issue unless and until the support terms of the separation agreement are set aside. On this basis, the courts have regularly denied any financial disclosure in such an action, as long as the support terms of the separation agreement remain in effect. (*Shiffman v Shiffman, supra; Gleeson v Gleeson, supra; Moat v Moat,* 27 AD2d 895; *Picotte v Picotte,* 82 AD2d 983, mot for lv to app dsmd 55 NY2d 847.) The Appellate Division, Second Department, has most recently adhered to this principle in *Potvin v Potvin* (92 AD2d 562) observing in a memorandum: "However, so much of defendant's notice to take plaintiff's oral deposition as requests information regarding his pre-

sent financial condition is premature. Plaintiff's present financial circumstances are not relevant to the defendant's claim, *inter alia,* that she was deceived regarding the true extent of her husband's income at the time that the separation agreement was entered into and will not become an issue unless and until the separation agreement or its support provisions have been vacated or set aside on the grounds of fraud, duress or overreaching, etc.".

In *Potvin v Potvin* (*supra*) the Second Department relied in part upon our determination in *Milts v Milts* (87 AD2d 779) where we unanimously reversed the denial of a motion for a protective order and vacated interrogatories which had been served without prejudice to the service of new interrogatories relating to the validity of the separation agreement, concluding that disclosure as to finances must await resolution of the preliminary issue as to the agreement's validity.

The issue presented here is the continued efficacy of that principle in light of the enactment of the Equitable Distribution Law, applicable to matrimonial actions commenced after July 19, 1980. The foregoing cases were decided upon the legal premise that a separation agreement, as with all other written contracts, could only be modified or vacated upon a significant showing of mutual mistake, fraud, duress or undue influence. The new operative standard contained in part B of section 236 of the Domestic Relations Law, however, may require some modification of the rule concerning disclosure as to finances where the support obligations of the parties had been fixed by a prior separation agreement. Although the Equitable Distribution Law permits an application to modify maintenance or child support upon a showing of "substantial change in circumstance" (Domestic Relations Law, § 236, part B, subd 9, par b), which is consistent with the prior law, in all other respects, such agreements are now accorded a substantially different status in terms of maintenance and support. Instructive is section 236 (part B, subd 3) of the Domestic Relations Law, which provides in part: "An agreement by the parties, made before or during the marriage * * * may include * * * (3) provision for the amount and duration of maintenance or other terms and conditions

of the marriage relationship, subject to the provisions of section 5-311 of the general obligations law, and *provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment"* (emphasis added).

Thus, the equitable distribution statute imposes a standard of judicial scrutiny, requiring that the court determine whether the maintenance and support provisions (1) were fair and reasonable when made, and (2) are not unconscionable at the time of entry of final judgment. This is a far different standard than that followed prior to equitable distribution, when the only relevant consideration was whether the agreement was unconscionable when made or was the result of fraud, undue influence, duress or overreaching (*Christian v Christian,* 42 NY2d 63; *Perry v Perry,* 64 AD2d 625).

The alteration in the standard under which separation agreements may be challenged likewise requires some modification of the former rule which precluded disclosure of finances before vacatur of the support provisions of the separation agreement. In applying a test of basic fairness or reasonableness, it may be necessary to consider the relative financial positions of the parties to determine whether, under the circumstances, the agreement was fair when made or, is unconscionable on the basis of the present situation of the parties. This is not to state that in every equitable distribution case, the statute permits the parties now to conduct a wholesale fishing expedition into the financial affairs of the other spouse solely based upon bare, conclusory assertions that the terms of the agreement were unfair or unconscionable or that there was overreaching. Adoption of such a rule would be self-defeating and would wholly negate the benefits to be derived from encouraging the parties, after full and frank disclosure, to fix their relative responsibilities in terms of support and maintenance.

Presumptively, from a public policy perspective, some degree of finality must be accorded to the separation agreement, knowingly and intelligently entered into. Otherwise, there would be no real incentive for the parties to come to an understanding as to support, maintenance,

property distribution and division of assets on a basis which they then believe to be equitable. Why would a spouse with greater assets or income voluntarily agree if he or she knows that the agreement is, at best, tentative and has finalized nothing? The public policy considerations would all be destroyed by such an easy loophole.

We disagree with our dissenting colleagues, who would permit a broad right of disclosure as to finances simply upon the asking, without any consideration given to the terms of the existing separation agreement or the sworn factual allegations of the moving party. The dissent places great emphasis on several claims in the pleadings and motion papers, namely, "distraught", "without benefit of counsel and advice", "the victim of her husband's conceal- ment" and "mutual mistake". These are words of art, frequently employed. We fail to see in this case how such general language "squarely placed in issue" the terms of a separation agreement when the essence of the entire charge is to undo and rescind the agreement. If that approach were to become the practice, it would establish the right of any spouse to trigger the upsetting of a written agreement merely by using the magic terms without any factual substantiation as defendant has done here.

While we recognize that the Equitable Distribution Law does warrant some departure from the rigid adherence to the principle expressed in cases such as *Shiffman* and *Gleeson* (*supra*), there is no reason to shift 180 degrees and obviate the rationale and strong public policy factors upon which those determinations were based. Rather, we opt for a middle ground which would require an affirmative, fac- tual showing, at least prima facie to permit disclosure in an action to modify or vacate the support provisions of a separation agreement. There must be a proper showing before a party may be permitted to upset the understand- ing of the parties and embark upon an intensive review, or rereview, of the finances of the other spouse.

The equitable distribution statute, in our judgment, continued, in effect, the prior rule which directed compul- sory financial disclosure where alimony, maintenance or support is "in issue" (Domestic Relations Law, § 236, part B, subd 4). However, where, as here, the support or mainte-

nance obligations of the parties are fixed by an agreement, neither support nor maintenance is "in issue" unless there is a real and legitimate presentation to vacate the support terms of the agreement on the basis of the criteria explicitly set forth in the statute. Thus, in such cases, it is necessary to review the factual predicate which has been set forth to ascertain whether, in fact, the underlying circumstances establish a proper basis to modify the agreement. In general, our law is laced with the proposition that conclusory allegations are insufficient for this purpose. For example, CPLR 3016 (subd [b]), requires particularity in the allegations as to fraud, mistake, breach of trust or undue influence and "the circumstances constituting the wrong shall be stated *in detail*" (emphasis added).

We find the record adduced before Special Term patently insufficient to justify any disclosure of the husband's finances sought to be undertaken by defendant, let alone the searching examinations sought. The counterclaims allege in broad and general terms that the agreement was "inherently unfair, unjust and inequitable" and that the maintenance and support provisions were "inadequate and overreaching". There are no specific and detailed allegations of fraud or undue influence. In any event, the claims are so clearly lacking in particularity that they fail to meet the requisites for such a pleading under CPLR 3016.

The first counterclaim seeks rescission upon the bare and general claim that the wife was "distraught and without professional or family counsel * * * to guide her, and did not and could not apprehend and understand the import of the Agreement". Possibly so, but the agreement contains an express acknowledgment to the contrary, to wit, that each party "has had an opportunity to obtain independent legal advice by counsel of his or her own selection; that each fully understands the facts; and with such knowledge, each of them is signing this agreement freely and voluntarily."

As to the issue of independent counsel, the fact that one attorney represented both parties in the preparation and execution of the separation agreement does not establish overreaching in and of itself so as to permit rescission (*Levine v Levine,* 56 NY2d 42; *Perry v Perry,* 64 AD2d 625;

*Freimour v Freimour,* 78 AD2d 896). Except for the conclusory assertion that the agreement was drafted by one attorney, purported to have been selected by plaintiff, there is no factual showing to justify the conclusion that the agreement was not arrived at fairly, that the attorney did not preserve neutrality in drafting the provisions to reflect the basic understanding of the parties or that the result is unconscionable. Nor is there any factual predicate to find that there was overreaching or undue influence.

The same holds true with respect to the second counterclaim, which seeks to reform the agreement to correct the alleged mutual mistake by the parties in omitting to provide for equitable distribution and in limiting child support to $300 per month. The agreement, in clear terms, provided for child support in that amount and the defendant acknowledges her salary is in excess of $30,000 annually. Also, the agreement states that each party shall retain his or her personal property and belongings and contains an equal division of furniture and household furnishings as set forth in an itemized schedule annexed to the agreement. The agreement, drawn in clear terms, evinces the parties' intention not to proceed under equitable distribution in regard to distribution of assets. Noticeably absent is any claim by the wife that the property settlement reflected in the schedule is unfair or inequitable.

Likewise deficient is the defendant's affidavit submitted to Special Term. In broad terms, she claims that her husband had taken advantage of her in arranging for the preparation of the separation agreement and that her mental and emotional state was such that she could not fully appreciate its terms. If these are intended to be the basis for a claim of overreaching, they are palpably insufficient as conclusory assertions.

While conceding that she earns in excess of $30,000 per year, the wife claims that, because of financial considerations, there is a likelihood that she could lose her position within the Harrison school system and that "this situation underlines the very reason for my seeking the financial information that is at issue here". However, the contingency that, some time in the future, the wife might possi-

bly be subjected to a loss of her position or reduction in her present level of earnings, does not constitute the requisite statutory basis to obtain the financial disclosure sought by her.

The record is insufficient to warrant an upward modification of support nor is there a claim or proof of any change in circumstances, as required on such a motion. Further, there are no factual allegations to support the naked claim that the agreement was unfair when made or is unconscionable now. General charges of unfair dealing or overreaching will not suffice. Before a party takes steps to undo a separation agreement and obtain disclosure of the spouse's finances, it is incumbent upon that party to adduce sufficient factual support constituting a legitimate basis to warrant modification or vacatur of the support provisions of the separation agreement. The absence of such supporting proof here compels the granting of the motion for a protective order to preclude examination as to plaintiff's finances.

Accordingly, the order, Supreme Court, New York County (GABEL, J.), entered September 16, 1982, should be modified, on the law, without costs, the motion for a protective order granted only to the extent of deleting from the notice any direction to produce documents concerning plaintiff's finances and limiting the deposition of plaintiff to preclude any examination as to his finances, without prejudice to such other further proceedings as the parties may deem advisable upon a proper and sufficient factual showing to evidence a ground to modify or vacate the support provisions of the separation agreement, and otherwise affirmed. The examination shall be held on a date and time mutually agreed upon by the parties.

SULLIVAN, J. (dissenting). In April, 1982 the husband, alleging that the parties had, pursuant to a separation agreement, lived separate and apart for more than a year, brought this action for a conversion divorce to terminate a 14-year marriage which had produced one child, a daughter now eight years of age. The wife interposed two "affirmative defense[s] and counterclaim[s]". The first seeks rescission of the separation agreement on the ground that, distraught and without the benefit of counsel and advice,

she signed an inherently unfair and inequitable agreement which had been drafted by an attorney chosen by her husband. The second seeks modification of the separation agreement based on the parties' mutual mistake in failing to made adequate provision for the child and to provide for equitable distribution of the marital property in accordance with the law then in effect. The separation agreement was executed on October 21, 1980, three months after the effective date of the Equitable Distribution Law (Domestic Relations Law, § 236, part B). The wife also asks for an increase in child support from the $300 per month provided in the separation agreement, and maintenance for herself. The separation agreement had made no provision for maintenance payments to the wife, who earns in excess of $30,000 per annum as a speech pathologist.

Simultaneously with the service of her answer, the wife served the husband with a notice of oral examination as to his "financial state". The denial of the husband's motion to vacate that notice in its entirety is the subject of this appeal. As reflected by her affidavit opposing the motion, the wife alleges overreaching on the part of her husband, a Merrill Lynch sales manager, who, by concealing his financial affairs, denied her access to information essential to fair and proper provision for her and her daughter.

We all agree that the Equitable Distribution Law (Domestic Relations Law, § 236, part B), applicable to matrimonial actions commenced after July 19, 1980, saps the vitality of the rule barring financial disclosure in a matrimonial action unless and until the support provisions of an existing separation agreement are set aside (see *Shiffman v Shiffman,* 57 AD2d 519; *Gleeson v Gleeson,* 69 AD2d 964, mot for lv to app dsmd 47 NY2d 709). We part company, however, with the majority when it concludes that this is not the appropriate case for such disclosure.

That a piece of legislation as enlightened as the Equitable Distribution Law contemplates a greater liberality with respect to pretrial financial disclosure in matrimonial actions would appear to be beyond dispute. The new law recognizes marriage as "an economic partnership", the dissolution of which causes severe economic repercussions on spouses and children. (See Governor's Memorandum of

Approval, McKinney's Session of Laws of NY, 1980, p 1863.) Consistent with that approach, section 236 (part B, subd 5, par c) provides for the equitable distribution of marital property. Moreover, the maintenance provision of any separation agreement executed after July 19, 1980 must be on terms "fair and reasonable at the time of the making of the agreement and * * * not unconscionable at the time of entry of final judgment" (Domestic Relations Law, § 236, part B, subd 3). No longer does the efficacy of a maintenance provision in a separation agreement turn solely on whether the agreement was unconscionable when made or the result of fraud, undue influence, duress or overreaching. (See, e.g., *Christian v Christian,* 42 NY2d 63; *Gorman v Gorman,* 87 AD2d 674.) Now the fairness and reasonableness of the separation agreement with respect to maintenance are, when challenged, critical issues at the outset of any matrimonial action and, although thitherto insulated from disclosure unless and until the separation agreement was set aside, appropriate subjects for relevant inquiry. While it is true that, probably due to clerical error (see Scheinkman, Practice Commentary, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law, C236B:5, pp 119-120), the fair and reasonable and not unconscionable standard appears only in the paragraph of section 236 (part B, subd 3) which deals with maintenance, and not in the property division and child support clauses of the same subdivision, the latter provisions are, in any event, subject to the traditional challenges of fraud, concealment and overreaching.

In our view the wife who, through her counterclaims, has squarely placed in issue the fairness, reasonableness and impartiality of the support and maintenance terms of the separation agreement, is entitled to the financial disclosure she seeks. We are not suggesting that the new law commands broad financial disclosure even before the separation agreement is set aside in every case where an assertion of unfairness and overreaching is made, but, here, the wife has shown enough to warrant the relief sought. She has alleged that, emotionally distraught, without independent legal representation, and the victim of her husband's concealment, she could not make an informed

decision regarding the settlement of the financial affairs of a theretofore intact 13-year marriage, and that the agreement failed to provide adequate maintenance for her and support for the child. Unless she is allowed to develop, by pretrial disclosure of the husband's finances, the allegation of concealment, an issue to which he does not address himself, she will be unable to make her case.

While we can appreciate the public policy considerations underlying the majority's concern that some degree of finality should be accorded separation agreements, those considerations are valid only if the parties have entered the agreement with full knowledge of all the facts. The wife alleges concealment and overreaching. The husband's only response is to rely on the sanctity of the agreement as a bar to any financial disclosure. *Milts v Milts* (87 AD2d 779), decided by this court and cited by the majority involves an October 14, 1976 separation agreement to which the "fair and reasonable [when made] and * * * not unconscionable at the time of entry of final judgment" standard does not apply. (See Domestic Relations Law, § 236, part B, subd 3.)

The husband also contends that, in any event, the wife's notice of examination exceeds the permissible scope of inquiry since, at least as to Federal and State income tax returns, it calls for the production of financial records for the years 1976 through 1981, inclusive. In arguing that section 236 (part B, subd 4) of the Domestic Relations Law limits disclosure "to a three year period or the length of the marriage, whichever is shorter," the husband distorts the statute which applies the three-year limitation to only the "net worth" statement. In *Ponard v Ponard* (52 AD2d 564), decided under former section 250, the predecessor to section 236 (part B, subd 4), this court determined that a wife could inquire into a husband's finances for the four years that they were living separate and apart and during which she was unaware of his financial status. (See, also, *Garrel v Garrel,* 59 AD2d 885; but see *Epstein v Epstein,* 21 AD2d 799, in which financial disclosure was limited to a two-year period preceding commencement of the action.) We agree, however, that the wife is not entitled to the 1981 returns since they are irrelevant to her claim that she was deceived

as to the true state of her husband's financial affairs at the time the separation agreement was executed on October 21, 1980. (See *Potvin v Potvin,* 92 AD2d 562.) For the same reason the scope of the deposition should not extend beyond 1980. Since, however, the Equitable Distribution Law recognizes marriage as an economic partnership, the tax returns of a party for the last five years of a marriage of over 13 years' duration would appear to be relevant.

The demand for the other enumerated documents is apparently limited to the current year, which would be 1980, the year the parties separated. Nor is the demand unnecessarily burdensome in its enumeration of the documents sought. CPLR 3101 (subd [a]) requires "full disclosure of all evidence material and necessary in the prosecution or defense of an action". The husband fails to show how the production of income tax returns and statements of brokerage or investment accounts, pension profit sharing or stock option plans and evidence of value of any proprietary interest in real or personal property would be so burdensome or oppressive as to warrant the court's intervention.

Accordingly, the order of Special Term denying the motion for a protective order should be modified only to the extent of limiting the scope of the deposition to the financial condition of the husband at the time of the execution of the separation agreement and limiting production of income tax returns to the years 1976 through 1980, and the production of the other enumerated documents to the year 1980 and, except as thus modified, affirmed.

KUPFERMAN, J. P., and LYNCH, J., concur with KASSAL, J.; SANDLER and SULLIVAN, JJ., dissent in an opinion by SULLIVAN, J.

Order, Supreme Court, New York County, entered on September 16, 1982, modified, on the law, without costs and without disbursements, the motion for a protective order granted only to the extent of deleting from the notice any direction to produce documents concerning plaintiff's finances and limiting the deposition of plaintiff to preclude any examination as to his finances, without prejudice to such other further proceedings as the parties may deem

advisable upon a proper and sufficient factual showing to evidence a ground to modify or vacate the support provisions of the separation agreement, and otherwise affirmed. The examination shall be held on a date and time mutually agreed upon by the parties.